STATE OF NORTH CAROLINA v. TERRY WILLIAM SMITH

No. 277A85

(Filed 28 July 1987)

1. **Homicide § 21.5; Assault and Battery § 14.2— assault and murder—evidence sufficient**

    The evidence in a prosecution for assault with a deadly weapon and first degree murder was sufficient to take the charges to the jury where both a murder and a felonious assault were clearly committed; the evidence clearly supports a finding that the defendant committed them; and the nature and number of decedent's wounds support a further finding that the murder was committed with premeditation and deliberation.

2. **Criminal Law § 103— instruction on role of jury—no error**

    The trial court did not err during a prosecution for first degree murder and assault by stating to prospective jurors that their only concern was to determine whether defendant was guilty of the crime charged or any lesser offense. The statements in context merely gave prospective jurors a correct explanation of the procedure to be followed at trial.

3. **Criminal Law § 162— introduction of courtroom personnel—reference to people of Edgecombe County—no objection, no assignment of error—no plain error**

    Defendant's assignments of error to references by the court and the prosecutor to the "people of Edgecombe County" and to the introduction of various courtroom personnel were overruled where defendant did not object to the references to the people of Edgecombe County, did not assign error to the introduction of various courtroom personnel, and failed to demonstrate plain error in either the references or the introductions.

**4. Jury § 7.11; Constitutional Law § 63— death qualification of jury—constitutional**

Death qualification of the jury does not violate the Sixth, Eighth and Fourteenth Amendments of the U. S. Constitution or Art. I, §§ 19 and 24, of the North Carolina Constitution.

**5. Constitutional Law § 30; Criminal Law § 87— defendant required to furnish list of witnesses before jury selection—no error**

The trial court did not err or abuse its discretion in a prosecution for first degree murder and assault by requiring defendant to furnish a list of witnesses prior to the voir dire examination of prospective jurors so that the jurors could answer questions of the court and counsel concerning their knowledge of and relationship to any of the witnesses who might be called on to testify. The trial court noted that this procedure had in the past resulted in considerable savings of time and defendant was unable to demonstrate specific prejudice. N.C.G.S. § 15A-905 (1983).

**6. Criminal Law § 88— cross-examination—restricted to attorney making objection on direct examination—no abuse of discretion**

There was no abuse of discretion in a prosecution for assault and first degree murder in the trial court's ruling that the attorney cross-examining a witness must also make the objections on direct examination of that witness. N.C.G.S. § 8C-1, Rule 611(a).

**7. Searches and Seizures § 44— denial of motion to suppress identification testimony—oral order at trial—written order six months later**

There was no error in a prosecution for assault and first degree murder in the trial court's entry of a written order denying defendant's motion to suppress identification testimony six months after trial where the order was simply a revised written version of the verbal order entered in open court.

**8. Homicide § 20.1— murder—photographs of body—admissible**

The trial court did not abuse its discretion in a prosecution for first degree murder by admitting photographs of decedent's body where the pictures illustrated testimony with respect to the crime scene in general, the location and position of the body when found, and the wounds suffered by deceased, there was no evidence that the body had been moved from the place where it had originally fallen, and the pictures were not unnecessarily gory or gruesome.

**9. Criminal Law §§ 60, 99.3— opinion of fingerprint expert—court's comment—no prejudice**

There was no prejudice in a prosecution for assault and murder from the judge's statement "that he testified to twelve points of identification without objection" after defense counsel objected to a question posed to an SBI agent testifying about fingerprint analysis of the murder weapon. The remark was not an expression of opinion but a response to an objection on a matter already in evidence; furthermore, the agent had already testified that there were twelve points of similarity between defendant's fingerprint and the fingerprint found on the pistol, and the State presented extensive evidence

that a gun owned by defendant was found at the murder scene and was identified by the wife as the weapon used against her.

**10. Criminal Law § 85— defendant's character—excluded—no prejudice**

Any isolated error in a prosecution for murder and assault relating to the failure of the court to allow evidence as to defendant's general character, his character for truthfulness and peacefulness, and the character for truthfulness of certain defense witnesses was clearly harmless in light of the extensive testimony given with respect to these matters. N.C.G.S. § 15A-1443(a) (1983).

**11. Criminal Law §§ 69, 90.1— telephone conversation used as alibi—cross-examination of own witness not allowed—other evidence to same effect introduced— no prejudice**

There was no prejudice in a prosecution for murder and assault from the court's refusal to allow defendant to ask certain questions of two employees of defendant's insurance company where defendant sought to establish that he placed a call to the insurance company to report that his pistol had been stolen at 1:19, and that he could not have gotten to his home from decedent's house in time to make that call. Defendant was allowed to introduce and pass among the jury a phone bill that established that a call was made from his house to the insurance company at 1:19 p.m. N.C.G.S. § 15A-1443(a) (1983).

**12. Criminal Law §§ 101.4, 128.2— juror allegedly expressed opinion on evidence— mistrial denied—no abuse of discretion**

The trial court in a prosecution for assault and murder did not abuse its discretion by denying defendant's motion for a mistrial, which had been based on information that one of the jurors had expressed an opinion on defendant's guilt prior to the close of evidence, where the court discussed the matter with the affiant who alleged that the juror had expressed an opinion, as well as with the juror, and concluded that the juror had done nothing improper but partially allowed defendant's motion by seating the alternate juror for the sentencing phase in place of the juror in question.

**13. Criminal Law §§ 43, 21— intimate photographs of defendant and girlfriend— motion in limine not ruled on before trial—no prejudice**

There was no prejudice in a prosecution for assault and murder from the court's failure to rule before trial on defendant's motion to suppress a photo album containing personal, intimate photographs of defendant and his girlfriend which could damage her reputation. Defendant did not renew the motion at trial, there was thus no indication that the girlfriend would have been called but for the court's refusal to grant defendant's motion in limine, and defendant's concern for his girlfriend's reputation was insufficient to show prejudice when balanced against the magnitude of the offense for which he was being tried. N.C.G.S. § 15A-1443(a) (1983).

**14. Constitutional Law § 31— motion for appointment of psychiatrist during sentencing for murder—denied**

There was no error in the sentencing phase of a murder prosecution from the denial of defendant's motion for appointment of a psychiatrist where defense counsel candidly admitted that there was no indication that defendant had a mental defect.

**15. Criminal Law § 135.7— murder—instructions in sentencing phase—jury question on unanimity—error**

The trial court committed plain error warranting a new sentencing hearing in a murder prosecution where the court initially instructed the jury that the court would be required to impose a sentence of death if the jury's unanimous recommendation was for death, or a sentence of life imprisonment if the unanimous recommendation was for life imprisonment; the jury asked if the life sentence was automatic if the jury's decision was not unanimous, or if the jury had to reach a unanimous decision regardless; and the court reiterated the need for the jurors to confer together without violating individual judgments and again informed the jury that its decision must be unanimous. *Upon inquiry by the jury,* the trial court must inform the jurors that their inability to reach a unanimous verdict should not be their concern but should simply be reported to the court.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing the sentence of death entered by *Winberry, J.,* at the 18 March 1985 Criminal Session of Superior Court, EDGECOMBE County. Heard in the Supreme Court 12 May 1987.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*T. Chandler Muse and Eugene W. Muse for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of assault with a deadly weapon on Dorothy Bottoms and the first degree murder of her husband, John H. Bottoms. He was sentenced to a term of twenty years imprisonment on the assault conviction and to death for the first degree murder conviction. Evidence pertinent to the arguments presented is set forth *infra.* We find no error in the guilt phase but remand for a new sentencing hearing.

GUILT PHASE

We first consider whether the trial court erred in failing to dismiss all charges, at the close of the State's evidence and of all the evidence, for insufficient evidence. "Under N.C.G.S. § 15-173, a defendant who introduces evidence waives any motion for dismissal or nonsuit made prior to the introduction of his evidence and cannot urge the prior motion as grounds for appeal." *State v. Stocks,* 319 N.C. 437, 438, 355 S.E. 2d 492, 492 (1987). *See also*

*State v. Bruce*, 315 N.C. 273, 280, 337 S.E. 2d 510, 515 (1985). Because defendant offered evidence following denial of his motion to dismiss at the close of the State's evidence, denial of that motion is not properly before us. *Id.* Defendant renewed his motion to dismiss at the close of all the evidence, however, and denial of that motion is properly before us.

On a motion to dismiss for insufficiency of the evidence the trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. *State v. Stocks*, 319 N.C. at 439, 355 S.E. 2d at 493 (1987) (quoting *State v. Young*, 312 N.C. 669, 680, 325 S.E. 2d 181, 188 (1985)). If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that defendant committed it, the case is for the jury and the motion to dismiss should be denied. *Id.*

The evidence showed that decedent and his wife of thirty-seven years had lived in Edgecombe County for about twelve years. Decedent operated a gun shop in the garage adjoining their house. There he sold shotguns, rifles, pistols and loading equipment, as well as miscellaneous hunting equipment and apparel. From time to time, depending on volume of trade, his wife helped out in the shop. Customers of the shop were admitted through a side door, but there was a direct connection between the house and the shop through a "mud room."

On the morning of 5 September 1984, a little before nine o'clock, a nineteen or twenty year old "boy" came into the shop. When decedent's wife looked into the well-lighted gun shop, she saw the boy looking around and talking to her husband. Periodically thereafter until the boy left, she went back and checked on her husband. Decedent's wife testified that she saw the boy's face but did not recognize him. He was a white male with long "bleached looking" hair wearing dungarees and a tank top shirt. She observed him from six to seven feet away over a period of approximately twenty minutes. He left the shop at approximately 9:15 to 9:20 a.m.

Shortly after 11:00 o'clock the boy came back into the shop. Decedent's wife let him in. The two had a brief, face-to-face conversation. After about five minutes decedent, who had been shav-

ing, came into the shop, and his wife went into the kitchen to fix her breakfast. Sometime thereafter decedent called to his wife and told her to go and get a shotgun. She did and took it to the shop where she again saw the boy talking to her husband. She then went to roll her hair.

As decedent's wife started out of the bathroom she heard a shot, and her husband said, "Dot, watch out." Then she heard three more shots. She walked into the family room and from there she saw the boy crouched in the kitchen with a pistol in his hands. He told her not to move, then shot her. It was the same boy she had seen several times earlier that day and whom she had last seen in the shop with her husband. The first shot hit her leg and knocked her down. When she tried to get up, the boy shot her again, breaking her right arm. She again tried to get up, and he shot her again in the left arm.

After shooting decedent's wife three times, the boy turned and went outside. While the wife was attempting to drag herself to the table in the corner where her pistol was located, she heard three more shots from the back of the house. The wife then got her pistol, hobbled into the kitchen to the phone, and dialed her sister-in-law. She heard the phone ring twice, but then was shot again and knocked down. As she lay there the boy started shooting through the screen door. He shot five times, striking her twice more, once in the hip. The boy came in through the screen door, picked up the phone and said, "Hello." At that time, the wife raised up and said, "I'm going to kill you if I can." The boy said, "Oh my God." He then dropped the pistol and ran out the mud room door.

On *voir dire* the wife identified defendant as the boy who shot her on 5 September 1984. She also related the circumstances of her identification of defendant from a series of pictures shown to her while she was in the hospital. She testified that an officer came into her room and said, "I have some pictures I want you to look at and see if you can identify any of them." He showed her the pictures. She immediately recognized defendant's picture and identified him to the officer as the person who had shot her. At trial she stated that her in-court identification was not the result of having seen defendant's picture while in the hospital but an in-

dependent identification based entirely on her recollection of the events at the time of the shooting.

Still on *voir dire* a safety and security officer at Nash General Hospital corroborated the wife's identification testimony. According to this officer the wife appeared coherent during the identification procedure, and there was no suggestion that she select any particular picture. A deputy sheriff who observed the out-of-court identification also testified that there was no indication of a suspect among the pictures. The trial court concluded that the pictorial lineup was not unduly suggestive; that it did not violate the defendant's right to due process; and that the wife's in-court identification was independent, based solely upon what she saw at the time of the assault.

The wife then identified defendant to the jury as the person who shot her. She further testified that after defendant dropped the pistol and ran out of the mud room door, she dragged herself to the phone and again called her sister-in-law to tell her that she had been shot. The sister-in-law and her husband came to the home and called for help. The wife received emergency medical attention and has since received extensive and recurring medical treatment for her wounds.

The sister-in-law testified that at approximately 11:40 a.m. she heard shots in the vicinity of the gun shop. Shortly thereafter her phone rang. When she answered it, there was no response. A few minutes later the phone rang again and she heard decedent's wife say, "John, [b]leeding to death." She and her husband rushed to the couple's home where they found the husband dead outside and the wife lying in a pool of blood inside. A pistol was lying on the floor, but the wife told her not to touch it because it was the gun she had been shot with. The pistol was later found to bear defendant's fingerprint. Evidence was also presented showing that defendant had bought this gun in August 1984.

A forensic pathologist testified that decedent had suffered six bullet wounds. One bullet entered through the back of his head, went through the brain, and lodged in the front of his skull. Another entered through his lip and lodged in the neck. Decedent also sustained two bullet wounds to his back, one to his right flank and abdomen, and another to his shoulder. The bullet that passed through the brain and one of the bullets that entered his

back and passed through his heart caused fatal wounds. The others would not have been immediately fatal, but could have caused his death with lack of proper attention.

An SBI laboratory technician testified that one of the bullets taken from the wife's body was fired through the pistol found at the crime scene which bore defendant's fingerprint. Evidence also showed that the bullets removed from the husband's body could have been fired through the same weapon.

Defendant testified that he had taken his girlfriend to school and gone to a shopping mall on 5 September 1984. A window on his truck was broken while he was in the mall and his pistol was taken from the glove compartment. After unsuccessfully trying to locate his insurance agent, he went to his father's home around 11:00 a.m. and told him about the break-in. He then returned to his home and reported the theft to his insurance company at 1:19 p.m.

Defendant also testified that he had been to the gun shop on many occasions and had spoken with the owner's wife several times. He specifically related a trip to the gun shop and a conversation with the wife on 1 September 1984.

Defendant's father testified that he saw his son's truck come back into the yard between 11:00 and 11:15 a.m. on the day in question, and that defendant thereafter told him about his truck having been broken into that morning and his pistol having been stolen. An employee at Interstate Insurance Company testified that defendant's insurance claim regarding the damage to his truck was reported between 2:00 and 3:00 p.m. that day. Finally, defendant offered numerous witnesses who testified that he had a good reputation for truthfulness and for being a peaceable person and that his character was generally good.

[1] Viewed in the light most favorable to the State, as required, the foregoing evidence was sufficient to take the charges to the jury. Both a murder and a felonious assault were clearly committed, and the evidence supports a finding that defendant committed them. The nature and number of decedent's wounds support a further finding that the murder was committed with premeditation and deliberation. *State v. Williams*, 319 N.C. 73, 80, 352 S.E. 2d 428, 433 (1987) (quoting *State v. Brown*, 315 N.C. 40, 58-59, 337

S.E. 2d 808, 822-23 (1985) ("[T]he nature and number of the victim's wounds is a circumstance from which premeditation and deliberation can be inferred.")). This assignment of error is therefore overruled.

[2]   Defendant also contends the trial court committed reversible error in stating to prospective jurors that their only concern was to determine whether defendant was guilty of the crime charged or any lesser included offense. These comments, defendant argues, may have conveyed the erroneous impression that the jury had to find defendant guilty of murder or some lesser crime. When taken in context, however, the statements merely gave prospective jurors a correct explanation of the procedure to be followed in the trial. The court was explaining that, if necessary, a sentencing hearing would be held following the guilt phase of defendant's trial, but that during the guilt phase, the jury's only duty was "to determine *whether* the defendant [was] guilty of the crime charged . . . ." (Emphasis added.) The prospective jurors were properly advised both of their responsibilities and of the procedure to be followed. This assignment of error is overruled.

[3]   During jury selection, the court asked prospective jurors: "Do you feel like you could . . . be a fair juror . . . to [defendant] and to the State of North Carolina and the people of Edgecombe County?" The prosecutor also asked prospective jurors if they could be fair to defendant, the State, and the people of Edgecombe County; and during closing argument he referred to himself as the representative for the State and county. Defendant contends these incidents overly emphasized concerns of the local community and that the court's inquiry constituted an expression of opinion prohibited by N.C.G.S. § 15A-1222. Finally, defendant argues that it was plain error for the court to introduce the sheriff to the jury as the "High Sheriff of Edgecombe County," to introduce the jurors to the deputy sheriff who was acting as bailiff, and to introduce assistant clerks in the courtroom during his trial.

Defendant did not object to references to "the people of Edgecombe County" by either the court or the prosecutor, nor did he object or assign error to the introduction of the various courtroom personnel. "[F]ailure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error

on appeal." *State v. Oliver*, 309 N.C. 326, 334, 307 S.E. 2d 304, 311 (1983). *Accord* N.C.R. App. P. 10 (1987).

1. A party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of Rule 10(b).

2. Where no action was taken by counsel during the course of the proceedings, the burden is on the party alleging error to establish its right to review; that is, that an exception, "by rule or law was deemed preserved or taken without any such action," or that the alleged error constitutes plain error.

In so doing, a party must . . . establish his right to review by asserting . . . how the error amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court.

*Oliver*, 309 N.C. at 335, 307 S.E. 2d at 311-12.

Defendant has failed to demonstrate that either the references to Edgecombe County and its populace or the introduction of courtroom personnel constituted plain error. He has not shown that these references, if error, " 'tilted the scales' and caused the jury to reach its verdict convicting [him]." *State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83 (1986). These assignments of error are overruled.

[4] Defendant also contends that death qualification of his jury violated the sixth, eighth, and fourteenth amendments to the United States Constitution and article I, sections 19 and 24, of the North Carolina Constitution. He argues that excusing all prospective jurors opposed to capital punishment rendered the resulting jury guilt-prone and thus not representative of a cross-section of the community.

This Court has noted that "[t]he practice of 'death qualifying' the jury in a capital case has recently been held to violate neither the United States Constitution, *Lockhart v. McCree*, --- U.S. ---, 90 L.Ed. 2d 137 (1986), nor article I, section 19 of the North Carolina Constitution, *State v. Barts*, 316 N.C. 666, 343 S.E. 2d

828 (1986)." *State v. Johnson*, 317 N.C. 343, 376, 346 S.E. 2d 596, 614 (1986). Defendant presents no argument as to why death qualification of jurors violates article I, section 24 (right of jury trial in criminal cases), of the North Carolina Constitution, but merely states that it does. We hold that it does not. This assignment of error is overruled.

[5] Defendant contends the trial court erred in requiring him to furnish a list of witnesses prior to the *voir dire* examination of prospective jurors and in indicating that witnesses whose names did not appear on the list would not be allowed to testify. Discovery statutes do not require a defendant to furnish the State with a list of proposed witnesses. *See, e.g.*, N.C.G.S. § 15A-905 (1983) Official Comment ("To balance the deletion of discovery of the names and addresses of State's witnesses, the General Assembly deleted from this section a proposal allowing the State to seek the names and addresses of defense witnesses."). By utilizing witness lists, defendant argues, the court made available to the State discovery material to which it was not entitled. Defendant contends that knowing in advance the identity of his prospective witnesses gave the State an unfair advantage and was thus prejudicial.

The trial court has broad discretion "to see that a competent, fair and impartial jury is impaneled and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Phillips*, 300 N.C. 678, 682, 268 S.E. 2d 452, 455 (1980) quoting *State v. Johnson*, 298 N.C. 355, 362, 259 S.E. 2d 752, 757 (1979). Here the court required the list so that jurors, "during voir dire, could look at the list and answer the questions of the Court and counsel concerning their knowledge of and relationship to any of the witnesses who might be called to testify." The court also noted that it had found "this procedure in the past, particularly in cases . . . involving large numbers of witnesses, to result in the considerable savings of time in the selection of the jury."

Defendant has not contended that he called or failed to call a witness because of this procedure, and he was allowed to call a witness not on the original list. In light of the court's purpose for requiring the list and defendant's inability to demonstrate specific

prejudice, we hold that the court did not err or abuse its discretion in requiring the lists.

[6] Defendant contends the trial court erred by ruling that the attorney cross-examining a witness must also make the objections on direct examination of that witness. He argues that the inability of both his attorneys to make objections deprived him of effective assistance of counsel.

No specific rule governs who may make objections when a party is represented by more than one attorney. However, "[g]enerally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within [the court's] discretion." *State v. Rhodes*, 290 N.C. 16, 23, 224 S.E. 2d 631, 635 (1976). *See also Shute v. Fisher*, 270 N.C. 247, 253, 154 S.E. 2d 75, 79 (1967). N.C.G.S. § 8C-1, Rule 611(a) empowers the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth [and] (2) avoid needless consumption of time. . . ." Promulgation of the objections rule thus fell within the trial court's discretion. Defendant has shown no specific prejudice and thus no abuse of discretion. This assignment of error is therefore overruled.

[7] Defendant next assigns as error the trial court's entry, over six months post-trial, of a written order denying defendant's motion to suppress identification testimony. He argues that this order should be held void as entered out of term without the consent of the parties pursuant to *State v. Boone*, 310 N.C. 284, 286-91, 311 S.E. 2d 552, 554-55 (1984). The order, however, is simply a revised written version of the verbal order entered in open court which denied defendant's motion to suppress decedent's wife's identification testimony. It was inserted in the transcript in place of the verbal order rendered in open court. In *State v. Horner*, 310 N.C. 274, 278-79, 311 S.E. 2d 281, 285 (1984), we held that the trial court's order denying defendant's motion to suppress items of physical evidence was not improperly entered "out of session and out of district" where the court passed on each part of the motion to suppress in open court as it was argued and later reduced its ruling to writing, signed the order, and filed it

with the clerk. The procedure here did not differ substantially from that in *Horner*. We thus overrule this assignment of error.

[8] Defendant contends that photographs of the decedent's body which were introduced and exhibited to the jury were potentially misleading, since there was no evidence that the body had not been moved before the pictures were taken. He also argues that the pictures were relevant only to show the location of the wounds which had been previously shown through other photographs and diagrams. Thus, even if relevant, the photographs were cumulative and unfairly prejudicial and should have been excluded under N.C.G.S. § 8C-1, Rule 403.

There was, however, no evidence that the body had been moved from the place where it had originally fallen. The argument that the pictures are or could have been misleading is therefore meritless.

Two of the pictures show decedent's body in enough detail that bullet wounds can be seen. While the pictures are unpleasant, they are not unnecessarily gory or gruesome. As we stated in *State v. Young*, 291 N.C. 562, 570, 231 S.E. 2d 577, 582 (1977): "[I]f a photograph accurately depicts that which it purports to show and is relevant and material, the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible." In *State v. Walden*, 311 N.C. 667, 672-73, 319 S.E. 2d 577, 581 (1984) we held that two photographs of a decedent were properly admitted since they were not gruesome or gory or excessive in number and did illustrate testimony concerning the position and appearance of the decedent's body after she had been shot.

The pictures defendant complains of illustrated testimony with respect to the crime scene in general, the location and position of the body when found, and the wounds suffered by the deceased. It was therefore within the trial court's discretion to allow these pictures into evidence, and no abuse of discretion has been shown. *State v. Mercer*, 275 N.C. 108, 120, 165 S.E. 2d 328, 337 (1969) (in trial court's discretion to determine when photographs depicting substantially the same scene become excessive in number, add nothing by way of probative value, and tend solely to inflame the jury.). This assignment of error is overruled.

**[9]** Defendant contends the court violated N.C.G.S. § 15A-1222 by expressing an opinion on fingerprint analysis testimony by an SBI agent. After defense counsel's objection to a question posed to the agent, the court stated: "He testified to twelve points of identification without objection." This statement, according to defendant, implied that the court believed there was substantial evidence that defendant's fingerprint was on the murder weapon and that defense counsel had no basis on which to raise any question as to this evidence.

A review of the transcript, however, reveals that the remark was not an expression of opinion but a response to an objection on a matter already in the record. Even if error, the court's remark could not have been prejudicial. Only moments earlier the agent had testified that there were twelve points of similarity between defendant's fingerprints and the print found on the pistol. Further, the State presented extensive evidence that a gun owned by defendant was found at the murder scene and identified by the wife as the weapon used against her. This assignment of error is thus overruled.

**[10]** Defendant next alleges that the trial court committed prejudicial error in failing to allow evidence as to his general character, his character for truthfulness and peacefulness, and the character for truthfulness of certain defense witnesses. He brings forward numerous exceptions and assignments of error dealing with rulings relating to character or reputation testimony. We have reviewed the transcript and we find no error. Isolated error, if any, with respect to a specific question is clearly harmless in light of the extensive testimony given with respect to these matters. N.C.G.S. § 15A-1443(a) (1983). There were at least seventeen defense witnesses who testified as to their opinion of defendant's character and reputation in the community for truthfulness and peacefulness. Several also testified as to their opinion of the truthfulness of defendant's father and his reputation for truthfulness. These assignments of error are therefore overruled.

**[11]** Defendant contends the trial court erred in refusing to allow defense counsel to ask certain questions of two employees of defendant's insurance company. Defendant called these witnesses to establish when he called the company to report that his pistol had been stolen. He then sought to impeach the answer of

State v. Smith

the witness who recorded his claim by challenging her answer and by presenting another employee who testified that a deputy sheriff had asked her co-worker not to talk with defense counsel in this case.

Assuming without deciding that it was error not to allow these witnesses to testify, defendant has shown no prejudice. N.C.G.S. § 15A-1443(a) (1983). The transcript reveals that defendant sought to establish that he placed a call to the insurance company at 1:19 p.m. on 5 September 1984. Defendant argued that this call established his innocence because he could not have gotten from decedent's house to his house in time to make this call.

Despite testimony that defendant's claim was received sometime after 2:00 p.m., defendant was allowed to enter into evidence and pass among the jury a phone bill that established that a call was made from his house to the insurance company at 1:19 p.m. on 5 September 1984. Because defendant thus can show no prejudice in the refusal to allow this line of questioning, this assignment of error is overruled.

[12] Defendant next assigns as error the trial court's denial of his motion to set aside the verdict and order a new trial after receiving information that one of the jurors, prior to the close of the evidence, had expressed an opinion on defendant's guilt. After discussing the matter with the affiant who alleged that the juror had expressed an opinion, as well as with the juror, the trial court concluded that the juror had made no statement concerning defendant's trial except that "she would have to consider all of the evidence, and . . . was not supposed to talk about the case." The court further concluded that the juror had done nothing improper which would taint her service as a juror or the verdict rendered. The court did, however, partially allow defendant's motion by seating the alternate juror for the sentencing phase in place of the juror in question.

Whether to grant a motion for mistrial is in the trial court's discretion. *State v. Stocks*, 319 N.C. at 441, 355 S.E. 2d at 494. *See also State v. King*, 311 N.C. 603, 619, 320 S.E. 2d 1, 11 (1984). "Mistrial is a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Stocks*, 319 N.C. at 441, 355 S.E. 2d at 492. The court's decision here was based on fact findings contained in

its order, which findings were supported by testimony of the juror. We thus find no abuse of discretion in the denial of the motion for mistrial.

[13] Defendant contends the trial court erred by failing to rule before trial on defendant's motion to suppress a photograph album and photographs taken from the defendant's home. The court was informed that the photo album contained very intimate personal photos of the defendant and his girlfriend and that use of the pictures could damage the girlfriend's reputation. The court, however, declined to rule on the motion prior to trial. Defendant claims he was therefore faced with risking the girlfriend's reputation, if he called her as a witness and the photos were ruled admissible, or having the jury wonder why she was not called as a witness. Defendant did not call the girlfriend as a witness and claims the failure to rule on his motion deprived him of due process of law.

"When a motion is made before trial, the court in its discretion may hear the motion before trial . . . or during trial." N.C. G.S. § 15A-952(f) (1983). Defendant has shown no prejudice by delay in hearing this motion. N.C.G.S. § 15A-1443(a) (1983). First, he did not at trial renew his motion to exclude the pictures. Thus, there is no indication that the girlfriend would have been called except for the court's refusal to grant defendant's motion in limine. *Cf. State v. Lamb*, 84 N.C. App. 569, 583-84, 353 S.E. 2d 857, 865, *disc. rev. allowed*, 319 N.C. 407, 354 S.E. 2d 722 (1987) (denial of defendant's renewed motion in limine seemed clearly the reason for defendant's failure to testify). Further, while defendant's concern for the reputation of his girlfriend is commendable, when balanced against the magnitude of the offense for which he was being tried it is insufficient to show that his rights were prejudiced. This assignment of error is overruled.

We conclude that, as to the guilt phase of his trial, defendant had a fair trial free from prejudicial error.

SENTENCING PHASE

[14] After defendant was found guilty, defense counsel asked the court for the first time to provide defendant a psychiatrist at cost to the State. In making that motion counsel stated: "[W]e have no notice or any reason to believe that he has any [mental]

defect, but . . . if, in fact, [defendant] is guilty of first degree murder, it is our opinion that there might well be some psychiatric or psychological or mental defect of which we are unaware . . . ." Defendant assigns as error the denial of this motion.

In *Ake v. Oklahoma*, 470 U.S. 68, 77-87, 84 L.Ed. 2d 53, 62-68 (1985), the United States Supreme Court held that when a defendant makes an *ex parte* threshold showing that his sanity is likely to be a significant factor in his defense, the Federal Constitution requires that the State provide a psychiatric expert to examine the defendant and assist in the preparation of his defense. *See Ake*, 470 U.S. at 83, 84 L.Ed. 2d at 66. The requirement that there be a threshold showing of specific necessity "is consistent with decisions of this Court holding that the denial of a motion for appointment of an expert is proper where the defendant has failed to show a particularized need for the requested expert." *State v. Penley*, 318 N.C. 30, 51, 347 S.E. 2d 783, 795-96 (1986) (quoting *State v. Jackson*, 317 N.C. at 1, 343 S.E. 2d at 814). Here counsel candidly admitted that there was no indication that defendant had a mental defect. Application of the factors enunciated in *Ake* thus leads to the conclusion that the denial of defendant's motion for appointment of a psychiatrist was not error.

[15]   The final contention we must consider is whether the trial court erred in its instructions to the sentencing jury following the jury's submission of this question: "If the jurors' decision is not unanimous, is this automatic life imprisonment or does the jury have to reach a unanimous decision regardless?" The court responded to the jury's inquiry as follows:

> [A]s I instructed you, the decision that you reach must be unanimous. You may not reach a decision in response to any inquiry propounded to you by a majority vote. All twelve of you must agree unanimously in accord with the instruction I have given you.
>
> You all have a duty to consult with one another and deliberate with a view to reaching an agreement, if it can be done without violence to individual judgments. Each of you must decide these matters for yourselves, but only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, each of you should not hesitate to re-examine your own views and change your opin-

ion if it is erroneous, but none of you should surrender your honest convictions as to the weight of effect the evidence [sic], solely because of the opinion of your fellow jurors, or for the mere purpose of returning a recommendation.

The jury had been instructed earlier: "if you unanimously recommend that the defendant be sentenced to death, this Court will be required to impose a sentence of death. If you unanimously recommend a sentence of life imprisonment, the Court will be required to impose a sentence of imprisonment in the State's Prison for life."

Defendant argues that the instruction in response to the jury's inquiry incorrectly implied that the jury had to reach a unanimous decision, either for life or for death, and he urges us to adopt a rule that juries making such an inquiry should be instructed that failure to reach a unanimous verdict is not a jury concern. He concedes that he did not object to these instructions at trial. The alleged error thus must amount "to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court." *Oliver*, 309 N.C. at 335, 307 S.E. 2d at 311-12. We must be convinced "that the error in question 'tilted the scales' and caused the jury to reach its verdict . . . ." *State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83 (1986).

We have repeatedly held that it is not error to fail or refuse to instruct the jury that a sentence of life imprisonment will be imposed upon the defendant in the event the jury is unable to reach unanimous agreement on the proper sentence. *State v. Young*, 312 N.C. 669, 685, 325 S.E. 2d 181, 191 (1985); *State v. Moose*, 310 N.C. 482, 502, 313 S.E. 2d 507, 520 (1984); *State v. Williams*, 308 N.C. 47, 73, 301 S.E. 2d 335, 351-52, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L.Ed. 2d 704 (1983); *State v. Brown*, 306 N.C. 151, 184-85, 293 S.E. 2d 569, 590 (1982); *State v. Smith*, 305 N.C. 691, 710, 292 S.E. 2d 264, 276, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982); *State v. Hutchins*, 303 N.C. 321, 353, 279 S.E. 2d 788, 807 (1981); *State v. Johnson*, 298 N.C. 355, 369-70, 259 S.E. 2d 752, 761-62 (1979). We continue to adhere to those decisions. As we noted in *Smith*, to instruct the jury that a life sentence would be imposed if it failed to agree would be "tantamount to 'an open invitation for the jury to

avoid its responsibility and to disagree.'" *Smith*, 305 N.C. at 710, 292 S.E. 2d at 276 (quoting *Justus v. Commonwealth*, 220 Va. 971, 979, 266 S.E. 2d 87, 92 (1980)).

Heretofore, however, we have not addressed this issue from the standpoint of what a jury should be told *when it inquires into the result of its failure to reach a unanimous verdict*. The trial court here avoided the question by reiterating the need for the jurors to confer together without violating individual judgments and again informing the jury that its decision must be unanimous. While this comported with our earlier cases, *in the context of the jury's inquiry* the instructions probably were misleading and probably resulted in coerced unanimity. Particularly when combined with the prior instruction, the instruction in response to the inquiry probably conveyed the erroneous impression that a unanimous decision, either for death or for life imprisonment, was required. That impression, in turn, probably led to a unanimity that would not otherwise have been attained.

The jury here obviously was not unanimous when it posed the question; otherwise, it would not have inquired as to the effect of its failure to attain unanimity. The jurors had deliberated for over three hours when the question was posed. They deliberated another one hour and twelve minutes after the question was posed before reaching a verdict. If a single juror agreed to the verdict reached because of the erroneous impression that unanimity was required, that juror was the difference between life and death for this defendant.

We thus hold that *upon inquiry by the jury* the trial court must inform the jurors that their inability to reach a unanimous verdict should not be their concern but should simply be reported to the court. We further hold that the failure to so instruct here, combined with the misleading instructions given, probably "'tilted the scales' and caused the [obviously divided] jury to reach its verdict . . ." imposing a sentence of death. *State v. Walker*, 316 N.C. at 39, 340 S.E. 2d at 83. It therefore constituted plain error warranting a new sentencing hearing.

The rule enunciated herein shall apply only to this case and any case(s) not finally determined on direct appeal as of the filing date of this opinion.

Guilt phase: no error.

Sentencing phase: new hearing.