STATE OF NORTH CAROLINA v. FRANKIE DWAYNE PALMER

No. 340A91

(Filed 2 July 1993)

1. **Evidence and Witnesses § 653 (NCI4th)— motion to suppress in-custody statements—oral pretrial ruling—written order after notice of appeal**

     The trial court's order denying defendant's motion to suppress his statements to a police officer was not improperly entered out of session and when the court was *functus officio* where the court held a hearing on the motion prior to trial; at the conclusion of the hearing, the judge in open court stated that the motion to suppress was denied and directed the prosecutor to draw an order and make the appropriate findings of fact; and an order signed by the judge was filed fifty-seven days after defendant gave notice of appeal of his conviction. The order was simply a revised written version of the verbal order entered in open court.

     **Am Jur 2d, Motions, Rules, and Orders §§ 26, 29 et seq.**

2. **Evidence and Witnesses § 1249 (NCI4th)— right to counsel— waiver of Sixth Amendment and N.C. Constitution rights— knowledge of source not required**

     Defendant waived his right to counsel under the Sixth Amendment to the U.S. Constitution and Art. I, § 23 of the N.C. Constitution when he signed a written waiver of his rights after being given the *Miranda* warnings even though he was not informed that he was entitled to counsel under the Sixth Amendment and Art. I, § 23 rather than under the Fifth Amendment since adversary judicial proceedings had been commenced against him. If a defendant is informed that he has a right to counsel, he does not have to know the precise source of the right before waiving it.

     **Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 555-557, 614.**

     **Necessity that Miranda warnings include express reference to right to have attorney present during interrogation. 77 ALR Fed 123.**

STATE v. PALMER

[334 N.C. 104 (1993)]

3. **Evidence and Witnesses § 2510 (NCI4th) — opinion or inference — personal knowledge or perception of witness**

A detective was properly permitted to testify that there was no forced entry into a murder victim's apartment where the detective testified concerning his inspection of the apartment which formed the basis for this conclusion. N.C.G.S. § 8C-1, Rules 602, 701.

**Am Jur 2d, Witnesses §§ 75, 76.**

4. **Evidence and Witnesses § 876 (NCI4th) — hearsay statement by victim — state of mind exception**

A hearsay statement by decedent, defendant's mother, that she would not give defendant money to bail him out of an embezzlement charge was admissible under the state of mind exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 803(3) and was relevant to show a motive by defendant to kill his mother.

**Am Jur 2d, Evidence §§ 497 et seq.**

5. **Evidence and Witnesses § 110 (NCI4th) — keeping money on person — admissible evidence of habit**

Testimony by decedent's sister that decedent always kept from twenty to forty dollars on her person was evidence of habit admissible under N.C.G.S. § 8C-1, Rule 406.

**Am Jur 2d, Evidence §§ 303, 316-319.**

6. **Homicide § 263 (NCI4th) — murder in perpetration of armed robbery — taking of property — continuous transaction — sufficiency of evidence**

There was sufficient evidence that defendant took U.S. currency and a pistol from decedent to support his conviction of murder in the perpetration of armed robbery where the evidence tended to show (1) that defendant told an officer he shot decedent with her own pistol and then carried the pistol from her apartment; and (2) that decedent always had money on her person, decedent's purse had been emptied and there was no money in it, and a search of decedent's apartment revealed no money. Furthermore, whether the taking of the pistol was part of the same transaction as the killing was a question for the jury.

**Am Jur 2d, Homicide § 442.**

7. **Robbery § 5.2 (NCI3d) — felony murder — armed robbery — instructions — taking of "property" — no plain error**

The trial court in a prosecution for felony murder did not commit plain error by instructing that, in order to find defendant guilty of the underlying felony of armed robbery, the jury must find that defendant took "property" from the person or presence of the victim rather than charging that the jury must find that he took U.S. currency and a pistol as alleged in the indictment where the evidence showed that defendant took money and a pistol and knife wrapped in a towel; if the jury found that defendant took a knife and towel, it must have found that he also took the pistol as alleged, since all three were part of one bundle; and defendant was thus not convicted on a theory not supported by the evidence and not alleged in the indictment.

**Am Jur 2d, Robbery § 15.**

8. **Homicide § 612 (NCI4th) — felony murder — instruction on self-defense not required**

The trial court in a felony murder prosecution was not required to instruct on self-defense by evidence that defendant told an officer that the victim, his mother, advanced on him with a knife, he was able to take the knife from her, and he stabbed her in the back as she walked away from him, since the jury could not find that defendant reasonably believed at that time that it was necessary to stab his mother to protect himself from death or great bodily harm. Nor was an instruction on self-defense required by defendant's statement that, after he stabbed his mother and procured his mother's pistol from another room, she crawled toward him and threatened him and he shot her, since a jury could not find that defendant reasonably believed it necessary to shoot a woman who was on her hands and knees and suffering from multiple stab wounds in order to protect himself from death or great bodily harm.

**Am Jur 2d, Homicide §§ 519 et seq.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Bowen (Wiley F.), J., at the 26 November 1990 Criminal Session of Superior Court, Lee County, upon a jury verdict finding the defendant guilty

of first degree murder. Heard in the Supreme Court 11 September 1992.

The defendant was tried for his life for the first degree murder and armed robbery of his mother, Ruby Chandler Palmer. The State's evidence showed that on 22 October 1989, the body of the defendant's mother was found in her apartment. There were multiple stab wounds in the body and numerous blunt force injuries to the head as well as a gunshot wound in the body.

Kevin Gray, a detective with the City of Sanford Police Department, testified that the defendant made a statement to him in which he said he was in his mother's apartment on 20 October 1989, at which time his mother advanced on him with a knife. He was able to get the knife away from her and she started walking away from him. At that time, he lunged at his mother and stabbed her repeatedly with the knife. Mr. Gray testified further that the defendant then told him he threw a table at her. The defendant then went to his mother's bedroom and got her gun. When he returned to the living room, his mother was on her hands and knees crawling out of the kitchen and saying, "I'm going to get you." The defendant then shot his mother. Mr. Gray testified further that the defendant told him he wrapped the knife and the pistol in a towel and left.

There was other evidence that the defendant needed money to help him avoid prison on an embezzlement charge and was angry with his mother for not helping him.

The jury found the defendant guilty of first degree murder based on the felony murder rule and guilty of armed robbery. The court arrested judgment on the armed robbery charge. A post conviction hearing was then conducted by the court without a jury at which it was concluded there were no aggravating circumstances pursuant to N.C.G.S. § 15A-2000(e).

The defendant was sentenced to life in prison. He appealed.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for the defendant-appellant.*

WEBB, Justice.

[1]  In his first assignment of error, the defendant argues that it was error to admit into evidence testimony by Kevin Gray as to statements made by the defendant because the court did not properly rule on his motion to suppress the statements. The court held a hearing on the motion prior to the trial. At the conclusion of the hearing, the judge in open court stated that the motion to suppress was denied and directed the prosecutor to draw an order and make the appropriate findings of fact. The judgment and commitment were issued and notice of appeal was given on 30 November 1990. The record shows that an order was filed on 17 January 1991 signed by the judge. Findings of fact and conclusions of law were made in the order and the defendant's motion was denied.

The defendant argues first that the order is invalid because the superior court was *functus officio* and it could not enter an order fifty-seven days after notice of appeal was given. He also argues that "this mysterious Order suddenly appeared out of nowhere and was filed in the Clerk's office." He says the order is not authenticated and there is no accounting for this order in the trial record or in the case on appeal. The order is contained in the agreed record on appeal which counsel for the defendant and the State stipulated to be correct. It purports to be an order signed by the judge who ruled on the motion. The record certified to this Court imports verity and we are bound by it. N.C. R. App. P. 9(a). *State v. Hedrick*, 289 N.C. 232, 221 S.E.2d 350 (1976). We have to consider it an order signed by the judge who heard the motion.

The defendant, relying on *State v. Boone*, 310 N.C. 284, 311 S.E.2d 552 (1984), says the order was signed out of the term and out of the district and is a nullity. This case is governed by *State v. Smith*, 320 N.C. 404, 358 S.E.2d 329 (1987) and *State v. Horner*, 310 N.C. 274, 311 S.E.2d 281 (1984), rather than *Boone*. In *Boone*, we held that an order purporting to allow the admission of evidence was a nullity because the judge did not make a ruling on the motion in court during the term, but signed the order after the term had expired. In *Smith* and *Horner*, rulings on the motions to suppress were made in open court during the terms at which the motions were heard. We held the rulings in open court during the term distinguished these cases from *Boone* and the fact that

the written orders were filed after the terms had concluded did not keep the orders from being valid. In *Smith*, the written order was entered six months after the trial. We said, "[t]he order, however, is simply a revised written version of the verbal order entered in open court which denied defendant's motion to suppress decedent's wife's identification testimony. It was inserted in the transcript in place of the verbal order rendered in open court." *State v. Smith*, 320 N.C. 404, 415, 358 S.E.2d 329, 335. We hold the order entered in this case is valid. This assignment of error is overruled.

[2] The defendant next assigns error to the admission of testimony by Mr. Gray as to the statement made by the defendant. The defendant was in the Lee County jail on 25 October 1989 when he requested to speak to Detective Gray. Mr. Gray went to the jail and carried the defendant to the police headquarters. The detective advised the defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), including his right to counsel. The defendant signed a written waiver of his *Miranda* rights and made a statement to the detective.

The defendant contends it was error to let the detective testify as to the defendant's statement to him. He concedes that he waived his right to an attorney under the Fifth Amendment to the Constitution of the United States when he signed the written waiver after receiving the *Miranda* warnings. He argues, however, that adversary judicial proceedings having been commenced against him, he was entitled to have counsel under the Sixth Amendment to the United States Constitution and under Article I, Section 23 of the Constitution of North Carolina. This right to counsel could not be waived, says the defendant, by the giving of the *Miranda* warnings. The defendant says that because he was not informed that he had the right to counsel under the Sixth Amendment and Article I, Section 23 of our state Constitution, he could not voluntarily and understandingly waive this right.

We disagree with this contention by the defendant that in order to waive his right to counsel a defendant must have explained to him his right to counsel under the Sixth Amendment to the United States Constitution and Article I, Section 23 of the Constitution of North Carolina. If a defendant is told he has a right to counsel, as the defendant was in this case, he does not have to

know the precise source of the right before waiving it. This assignment of error is overruled.

[3] The defendant next assigns error to the admission of testimony by Mr. Gray. While the detective was testifying on direct examination the following colloquy occurred:

Q. Detective Gray, during your search of the apartment, did you discover any sign of forced entry into the apartment?

(DEFENSE COUNSEL): Objection.

COURT: Overruled.

A. No, sir. There was no forced entry into the apartment.

(DEFENSE COUNSEL): Objection. Move to strike.

COURT: Overruled.

A. I walked directly around the entire house. There was no forced entry into the house at all.

(DEFENSE COUNSEL): Move to strike.

COURT: Denied.

Q. Now, what did you see that you base that on, Detective Gray? Tell me what it was you saw that you base that on.

A. I checked all the doors—well, which was only one door actually going to the upstairs, which there was no pry marks at all. The door was not forced open.

I checked all the windows on the first floor, which were all closed. This is a front door to the house, which does not go to that apartment, but that was also secure.

The defendant contends this testimony of the detective that there was no forced entry into the apartment was admitted in violation of N.C.G.S. § 8C-1, Rule 602 which provides in part, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." The defendant says the evidence shows the detective had no way of knowing whether there had been a forced entry. The defendant also argues that this testimony was inadmissible under N.C.G.S. § 8C-1, Rule 701, which provides: "[i]f the witness is not testifying as an expert, his testimony in the form

of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." The defendant says that if the detective's statement that there was no forced entry into the apartment was an expression of an opinion, it was not helpful to a clear understanding of his testimony. He also argues this opinion was not rationally based on the detective's perceptions.

We hold there was no prejudicial error in allowing this testimony. The detective testified as to the inspection he made of the apartment upon which he made his conclusion that there had been no forced entry. The jury should have had no difficulty determining whether his conclusion was correct. This testimony did not unfairly prejudice the defendant. This assignment of error is overruled.

[4]  The defendant next assigns error to the testimony of a witness. Annie McKiver testified for the State over the objection of the defendant that the deceased told her that "she wasn't going [to] bail [defendant] out of embezzling." "She said she wouldn't give [defendant] a penny out of neither one of [her] jobs." One theory of the State at the trial was that the defendant killed his mother because she would not give him money to help him stay out of prison on another charge. If she in fact refused to help the defendant in this way it would provide a motive for him to kill her.

This testimony as to what the deceased had said constituted a statement other than one made by the declarant while testifying at trial to prove the truth of the matter asserted. It was hearsay testimony. N.C.G.S. § 8C-1, Rule 801(c) (1992). N.C.G.S. § 8C-1, Rule 803 provides in part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (3) Then Existing Mental, Emotional or Physical Condition.—A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)[.]

This hearsay statement of the decedent that she would not give the defendant any more funds was admissible under this section as an exception to the hearsay rule. It was a statement of the declarant's intent and it was relevant to show a motive by the defendant to kill his mother. *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988); *Griffin v. Griffin*, 81 N.C. App. 665, 344 S.E.2d 828 (1986). This assignment of error is overruled.

[5] In his next assignment of error, the defendant contends it was error to allow the decedent's sister to testify that she was familiar with the decedent's habit of keeping money and she always kept on her person from twenty to forty dollars. The State offered this evidence pursuant to N.C.G.S. § 8C-1, Rule 406 which provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

The defendant, relying on the definition of habit in the commentary which definition is "one's regular response to a repeated specific situation[,]" says that the deceased's conduct was not "any type of regular practice of meeting a particular kind of situation with a specific type of conduct." We believe the custom of always having money on her person constituted a habit. If the definition in the commentary is to be used, we believe keeping at all times a sum of money is a response to the situation of whether or not a person keeps money on his or her person at all times.

[6] The defendant next assigns error to the denial of his motion to dismiss the charge of felony murder. This motion was based on what the defendant contends is the lack of evidence to support the underlying felony of armed robbery. The indictment charged that the defendant took United States currency and a pistol from the deceased and the defendant says there is no evidence to support this feature of the case.

The defendant's statement to which Mr. Gray testified included a statement that after he had shot his mother, he carried the pistol from the apartment. This supports the jury's finding that he took the pistol during the course of the robbery. The deceased's purse had been emptied and there was no money in it. A search of the apartment revealed no money and there was evidence that

the deceased always had money. This would support a finding by the jury that there was money in the apartment which was taken at the time of the killing.

The defendant also says there is not sufficient evidence that the taking of the pistol was part of the same transaction as the killing, which is necessary to prove an armed robbery. *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985). It was a question for the jury in this case as to whether the taking of the pistol was a part of a continuous transaction. It does not matter if the intention to commit the theft is formed before or after the force was used if they are part of a continuous transaction. *State v. Green*, 321 N.C. 594, 365 S.E.2d 587 (1988). This assignment of error is overruled.

[7] In his next assignment of error, the defendant contends the court improperly charged when defining armed robbery as the underlying felony for first degree murder and when it charged on the offense of armed robbery. The court instructed the jury that in order to find the defendant guilty of armed robbery that it must find the defendant took and carried away property from the person or presence of the deceased.

The defendant says it was error for the court not to charge that the jury must find that the defendant took and carried away United States currency and a pistol, which is what the State charged in the indictment was the property taken. He says this instruction allowed the jury to convict him on theories of guilt that were not supported by the evidence and not alleged in the indictment. He argues that the question of what property was taken was a hotly contested issue in this case and by failing to instruct the jury that it must find the defendant took United States currency and a pistol, the jury was allowed to convict for the taking of something for which he was not charged.

The defendant did not object to these instructions at the trial and thus did not preserve this question for appellate review. N.C. R. App. P. 10(b). The defendant asks us to review this question under the plain error rule. "The test for plain error is whether absent the omission the jury probably would have returned a different verdict." *State v. Stevenson*, 327 N.C. 259, 265, 393 S.E.2d 527, 530 (1990).

STATE v. PALMER

[334 N.C. 104 (1993)]

We cannot say the court committed error in not charging that the jury must find the defendant took United States currency or a pistol rather than charge that the jury must find he took property. The evidence for the State was that he took money and the pistol and a knife wrapped in a towel. There was no evidence he took anything else. If the jury found he took a knife and a towel, it must have found he also took a pistol because the evidence was the knife, towel, and pistol were all part of one bundle. We do not believe the jury convicted the defendant on a theory not supported by the evidence or convicted him for something for which he was not charged.

We hold that this jury charge was not erroneous. If it was erroneous, we cannot hold the jury probably would have reached a different verdict if the jury had been charged as the defendant says it should have been. This assignment of error is overruled.

[8]   In his last assignment of error, the defendant contends it was error not to charge on self defense. In order to be entitled to an instruction on self defense, there must be evidence among other things that it reasonably appeared necessary to the defendant to kill in order to protect himself from death or great bodily harm. *State v. Spaulding*, 298 N.C. 149, 257 S.E.2d 391 (1979). In the light most favorable to the defendant, we cannot say the evidence meets this test.

In his statement to Mr. Gray, the defendant says his mother advanced on him with a knife. He was able to take the knife from her and he stabbed her in the back as she was walking away from him. The jury could not find that the defendant reasonably believed at that time that it was necessary to stab his mother to protect himself from death or great bodily harm. The evidence was that the defendant also told Mr. Gray that after he procured his mother's pistol, she crawled toward him and threatened him. At this time he shot her. A jury could not find that defendant reasonably believed that it was necessary to protect himself from death or great bodily harm to shoot a woman who was on her hands and knees, suffering from multiple stab wounds. This assignment of error is overruled.

NO ERROR.

Justice Parker did not participate in the consideration or decision of this case.