STATE OF NORTH CAROLINA v. ELTON OZELL McLAUGHLIN

No. 637A84(3)

(Filed 8 September 1995)

### 1. Jury § 226 (NCI4th)— first-degree murder—jury selection—rehabilitation denied

There was no error in a first-degree murder prosecution where defendant contended that the court did not give him an adequate opportunity to rehabilitate two prospective jurors. The first prospective juror stated that although he did not have any moral or religious objections to the death penalty, his religious views would make it hard for him to consider the issue of punishment, and nothing in the transcript tends to indicate that further questioning would have shown that he could have set aside his strong religious beliefs in order to apply the law according to the trial court's instructions. The second prospective juror clearly and unequivocally stated that she could not temporarily set aside her religious beliefs against the death penalty and defendant's attempts to rehabilitate her as a juror had already been fruitless and time-consuming.

Am Jur 2d, Jury § 279.

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

### 2. Criminal Law § 1347 (NCI4th)— first-degree murder—sentencing—course of conduct—evidence of other murders

The trial court did not err during a first-degree murder sentencing hearing by allowing the State to introduce evidence of other murders as evidence tending to show the aggravating circumstance that the murder was part of a course of conduct which included other crimes of violence against another person or persons. Defendant was sentenced to death for the murder of James Worley; the facts surrounding the subsequent murders of James Worley's wife and her daughter were sufficiently connected to his murder to be submitted to the jury for determination of whether they were, indeed, parts of the same course of conduct.

Am Jur 2d, Criminal Law §§ 598, 599.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.

Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.

3. **Criminal Law § 1337 (NCI4th)— first-degree murder—sentencing—previous conviction involving violence**

The trial court did not err during a first-degree murder resentencing hearing by allowing into evidence defendant's stipulation that he had previously been convicted of a felony involving the use of violence. Defendant had stipulated in his original trial in 1984 that he had been convicted of involuntary manslaughter, that the act involved the use of violence, and that he intentionally shot and killed the victim; defendant filed a motion on 12 June 1992 to limit testimony concerning a 1975 conviction for involuntary manslaughter; that motion contained a stipulation; defendant sought at the beginning of his capital resentencing hearing to withdraw the motion and the stipulation; the court allowed the withdrawal; and the State sought to introduce the stipulation from the original trial during the resentencing hearing. This was not a stipulation as to a matter of law. Although the stipulation used the language "involved the use of violence," this language addressed the factual circumstances supporting the prior conviction rather than a legal standard.

Am Jur 2d, Criminal Law §§ 598, 599.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

**4. Criminal Law § 1363 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—sentence of accomplice**

The trial court did not err in a first-degree murder resentencing hearing by not admitting evidence to establish the nonstatutory mitigating circumstance that an accomplice had received only life imprisonment. Such evidence has consistently been held inadmissible under North Carolina law. The question of admissibility of a codefendant's sentence was not an issue in *Parker v. Dugger*, 498 U.S. 932, and that decision has no bearing on this case.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**5. Criminal Law § 442 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—jury's responsibility**

There was no error in a first-degree murder resentencing hearing where the prosecutor repeatedly emphasized during his closing argument that defendant started the chain of events that resulted in the jury being called to hear the case. Although defendant contended that the argument unconstitutionally diminished the jury's sense of responsibility for its sentencing decision, it has previously been held that such an argument does not violate defendant's constitutional rights.

**Am Jur 2d, Trial §§ 567-576.**

**6. Criminal Law § 452 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—definition of mitigating circumstances**

There was no error in a first-degree murder resentencing hearing where the prosecutor told the jurors that mitigating circumstances are "things which [defendant] says make his crime less deserving of the death penalty" and that "[y]ou don't have to find [a mitigating circumstance] if you don't want to."

**Am Jur 2d, Trial §§ 554 et seq.**

**7. Criminal Law § 452 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—weighing of aggravating and mitigating circumstances**

There was no error in a first-degree murder resentencing hearing where defendant contended that the prosecutor misstated the manner in which the jury should evaluate the mitigat-

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

ing and aggravating evidence but the prosecutor, while placing a negative interpretation upon defendant's evidence, was properly addressing the process of weighing aggravating and mitigating circumstances.

**Am Jur 2d, Trial §§ 554 et seq.**

8. **Criminal Law § 447 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—impact on victims**

There was no error in a first-degree murder resentencing hearing where the prosecutor made comparisons between defendant's life and the life that his victims would never have. Although defendant argued that N.C.G.S. § 15A-2000 renders victim impact statements irrelevant in capital sentencing proceedings, there was nothing in the prosecutor's argument that would compel a trial court to intercede *ex mero motu.*

**Am Jur 2d, Trial §§ 648 et seq., 664 et seq.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

9. **Criminal Law § 463 (NCI4th)—first-degree murder—sentencing—prosecutor's argument—defendant as contract killer**

There was no error requiring intervention *ex mero motu* in a first-degree murder resentencing hearing where defendant contended that the prosecutor argued without adequate evidentiary support that defendant was a contract killer, referred to defendant's legal rights, and referred to defendant as a mass murderer.

**Am Jur 2d, Trial §§ 609 et seq.**

10. **Criminal Law § 1363 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—subsumed in statutory circumstances**

There was no error in a first-degree murder resentencing hearing where the trial court did not submit the requested nonstatutory mitigating circumstances that defendant was of low intelligence with poor judgment and limited insight, that defendant was under a pattern of substance abuse at the time of the commission of the crime, and that defendant's limited mental

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

capacity at the time of the trial significantly reduced his culpability for the offense. The trial court properly ruled that these proposed nonstatutory mitigating circumstances were subsumed in the mitigating circumstances set out in N.C.G.S. § 15A-2000(f)(2) and (f)(6), mental and emotional disturbance, and impaired capacity.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**11. Criminal Law § 680 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—peremptory instructions—defendant's employment record**

The trial court did not err in a first-degree murder resentencing hearing by failing to peremptorily instruct the jury with respect to a nonstatutory mitigating circumstance concerning defendant's employment record and that he was a productive member of society. If the evidence is controverted or not manifestly credible, the trial court should not give peremptory instructions. Here, the State pointed to evidence tending to show that defendant was responsible for four deaths in the community and was a confessed drug and alcohol abuser. Defendant's status as a productive member of society was anything but uncontroverted.

**Am Jur 2d, Trial §§ 1441-1447.**

**12. Criminal Law § 680 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—peremptory instructions—defendant's self-improvement and good record while incarcerated**

The trial court did not err in a first-degree murder resentencing hearing by failing to peremptorily instruct the jury with respect to a nonstatutory mitigating circumstance concerning defendant's self-improvement while incarcerated. The State produced evidence that defendant had committed two major infractions while incarcerated and the defendant's evidence for the circumstance was therefore controverted. Defendant's evidence for the desirable nonstatutory mitigating circumstance concerning his "desirable prison record" was also controverted by evidence of possession of a weapon, an attempt to remove a flammable material from the prison kitchen with intent to use it to cause bodily harm, and a fistfight with another inmate.

**Am Jur 2d, Trial §§ 1441-1447.**

**13. Criminal Law § 680 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—peremptory instructions—assistance to other inmates**

The trial court did not err in a first-degree murder resentencing hearing by not giving a peremptory instruction on the nonstatutory mitigating circumstance that defendant made significant efforts to be of assistance to other inmates in the prison to help them adjust to prison life where the evidence showed that he had been of assistance to only one inmate. While not controverted, the evidence was not manifestly credible.

**Am Jur 2d, Trial §§ 1441-1447.**

**14. Criminal Law § 680 (NCI4th)— first-degree murder—sentencing—nonstatutory mitigating circumstances—peremptory instructions—defendant becoming cook in prison**

There was no prejudicial error in a first-degree murder resentencing hearing where the trial court failed to give a peremptory instruction regarding the mitigating circumstance that defendant had achieved a position as a cook in the prison kitchen. Evidence as to this mitigating circumstance was both uncontroverted and manifestly credible and failing to give the peremptory instruction was therefore error. Assuming that the error rose to the level of a federal constitutional violation, overwhelming evidence supported the jury's findings of aggravating circumstances and the failure to give the peremptory instruction, which may have caused one or more jurors to fail to find as a mitigating circumstance that defendant worked as a cook in prison, was harmless beyond a reasonable doubt.

**Am Jur 2d, Trial §§ 1441-1447.**

**15. Criminal Law §§ 1357, 1360 (NCI4th)— first-degree murder—sentencing—mitigating circumstances—impaired capacity and emotional disturbance—poor judgment, limited insight, intoxicating substances**

There was no plain error in a first-degree murder resentencing hearing where defendant contended that the trial court erred by failing to instruct the jury that it could find the statutory mitigating circumstances of emotional disturbance and impaired capacity based on defendant's poor judgment, limited insight, and consumption of intoxicating substances. Although defendant contends that the trial court was required to state all possible

conditions that tended to support a finding of either circumstance once it undertook to instruct the jury about specific conditions that would permit a finding that the two statutory mitigating circumstances existed, the jury was presented with all of the evidence and defendant outlined all of the circumstances he contended supported finding these mitigating circumstances during his closing argument. There was nothing in the instructions given to warrant reversal based on plain error.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**16. Criminal Law § 1348 (NCI4th)— first-degree murder—sentencing—definition of mitigating circumstances**

There was no error in a first-degree murder resentencing hearing where the jury returned after beginning deliberations, asked how mitigating circumstances were to be deemed of value, and defendant contended that the definition given unduly restricted the jury's consideration of relevant evidence by not reinstructing the jury to consider any other circumstances arising from the evidence which the jury deemed to have mitigating value. This was a reinstruction of the jury; reviewed in their entirety, the original instructions did not restrict the jury from considering all evidence which might have mitigating value.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**17. Jury § 141 (NCI4th); Criminal Law § 1322 (NCI4th)— first-degree murder—sentencing—jurors' misconceptions concerning parole**

The trial court did not err in a first-degree murder resentencing by excluding all references to parole eligibility during *voir dire*, the trial, and jury instructions.

**Am Jur 2d, Trial §§ 1441-1447.**

**18. Criminal Law § 1321 (NCI4th)— first-degree murder—sentencing—unanimity**

The trial court did not err in a first-degree murder resentencing hearing where, upon determining that the jury was divided eleven to one, the court gave an instruction which included the statement that the answer to Issue Number Four must be unanimous. A jury must be unanimous in deciding any sentence deter-

minative issue, and Issue Four is a sentence determinative issue. There was nothing coercive in the instructions when reviewed in context and in their entirety because the jurors merely stated that they were not unanimous and did not specifically inquire as to the consequence of inability to reach unanimity, and the trial court explicitly instructed the jurors that their inability to reach a unanimous recommendation should not be their concern, but should simply be reported to the court.

**Am Jur 2d, Trial §§ 1437, 1445-1447.**

**19. Evidence and Witnesses § 1406 (NCI4th); Criminal Law § 1309 (NCI4th)— first-degree murder—sentencing hearing—codefendant taking Fifth—use of prior testimony**

The trial court did not err in a first-degree murder resentencing hearing by allowing a codefendant's testimony from a prior trial to be read into evidence where the codefendant had asserted his privilege against self-incrimination. Whether this evidence was admissible under N.C.G.S. § 8C-1, Rule 804 is not controlling; defendant was not awarded a new trial but a new capital sentencing hearing. N.C.G.S. § 15A-2000(a)(3) expressly provides that evidence presented during the guilt determination phase of a capital case is competent and admissible as a matter of law during a capital sentencing proceeding.

**Am Jur 2d, Evidence §§ 890-893, 896, 901-905, 920, 921.**

**Witness' refusal to testify on ground of self-incrimination as justifying reception of evidence of prior statements or admissions. 43 ALR3d 1413.**

**20. Constitutional Law § 340 (NCI4th)— first-degree murder— resentencing—use of codefendant's prior testimony—no violation of right to confrontation**

There was no violation of defendant's constitutional right to confrontation in a first-degree murder resentencing hearing where a codefendant refused to testify and his testimony from the prior trial was admitted. Defendant was represented by counsel at his original trial and had ample opportunity to cross-examine the codefendant on the stand at that time; defendant did in fact extensively cross-examine the codefendant during the original trial; his motivation to cross-examine the codefendant then was the same as his motivation at the new capital sentencing proceeding leading to this appeal; and the codefendant simply

refused to answer any questions, as in *California v. Green*, 399 U.S. 149.

**Am Jur 2d, Criminal Law §§ 720 et seq., 956 et seq.**

**21. Criminal Law § 1373 (NCI4th)— first-degree murder— death penalty—not disproportionate**

A death penalty in a first-degree murder resentencing hearing was not disproportionate where the record fully supports the aggravating circumstances found by the jury, and there is no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary consideration. Defendant had previously been convicted of three counts of first-degree murder for which he received one death sentence and two life sentences; during the resentencing, the jury considered the sentencing of defendant solely for the murder for which he had received the death penalty; the jury on resentencing found that defendant had been previously convicted of a felony involving the use of violence to the person and that the murder was committed for pecuniary gain; and the jury found as mitigating circumstances that defendant aided in the apprehension of another capital felon, defendant cooperated with law enforcement officers at an early stage, defendant has made substantial efforts to improve himself by participating in both religious studies and voluntary training courses, defendant has achieved a desirable and competitive position within the prison, defendant has made a significant effort to be of assistance to other inmates, defendant had achieved a desirable prison record, and defendant has consistently supported his child financially. The North Carolina Supreme Court has never found disproportionality in a case in which defendant was found guilty for the death of more than one victim. N.C.G.S. § 15A-2000(d)(2).

**Am Jur 2d, Criminal Law §§ 609 et seq., 625 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

Justices LAKE and ORR did not participate in the consideration or decision of this case.

**STATE v. McLAUGHLIN**

[341 N.C. 426 (1995)]

Justice FRYE dissenting.

Justice WHICHARD joins in this dissenting opinion.

Appeal by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment sentencing him to death entered by Brooks, J., at the 8 February 1993 Criminal Session of Superior Court, Bladen County. Heard in the Supreme Court on 11 October 1994.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Sam J. Ervin, IV, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant Elton Ozell McLaughlin was convicted in 1984 of the first-degree murders of James Elwell Worley, Shelia Denise Worley, and Psoma Wine Baggett. He was sentenced to life imprisonment for the murders of Shelia Denise Worley and Psoma Wine Baggett and sentenced to death for the murder of James Worley. This Court found no error in the convictions and affirmed the sentences entered by the trial court. *State v. McLaughlin*, 323 N.C. 68, 372 S.E.2d 49 (1988). Subsequently, the Supreme Court of the United States vacated defendant's sentence of death for the murder of James Worley and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *McLaughlin v. North Carolina*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990). On remand, this Court determined that *McKoy* error had occurred and was not harmless beyond a reasonable doubt and remanded the case for a new capital sentencing proceeding. *State v. McLaughlin*, 330 N.C. 66, 408 S.E.2d 732 (1991). A new capital sentencing proceeding was conducted at the 8 February 1993 Criminal Session of Superior Court, Bladen County, and defendant was again sentenced to death.

A detailed review of the evidence introduced during defendant's original trial is set forth in the prior opinion of this Court, finding no error in that trial. *McLaughlin*, 323 N.C. 68, 372 S.E.2d 49. Further discussion of the evidence introduced during that trial is unnecessary here.

During the new capital sentencing proceeding, the State produced evidence that Shelia Denise Worley solicited defendant

McLaughlin to kill her husband, James Elwell Worley. After some initial hesitation, defendant agreed to kill Mr. Worley for $3,000. Defendant asked Eddie Carson Robinson to assist him in killing Mr. Worley. On the night of 25 March 1984, defendant and Robinson, aided by Ms. Worley, entered the house of Mr. Worley and killed him as he slept in his bed. In order to dispose of the body, the two men placed Mr. Worley in his car, drove it to a remote location, and set it on fire. After failing to receive payment for their services and after learning that Ms. Worley had talked to police concerning her husband's death, Robinson and defendant decided to kill Ms. Worley.

On 29 April 1984, while Ms. Worley and her two children were visiting defendant at his mobile home, defendant lured Ms. Worley to a hallway where Robinson struck her with a pipe. The two men dragged her to the bathroom and immersed her in a tub of water. The two men then placed Ms. Worley's body in the trunk of her car. They went back into defendant's mobile home for Ms. Worley's two sleeping children, four-year-old Psoma Wine Baggett and eighteen-month-old Alecia Baggett.

The evidence conflicted as to who suggested that four-year-old Psoma Baggett could identify them and should be killed. After the child asked for her mother, defendant struck her with the pipe. Robinson also struck Psoma with the pipe, while Alecia remained asleep in the car. Robinson drove Ms. Worley's car, containing the bodies of Ms. Worley and Psoma, to a bridge over White Creek. Upon arrival, defendant and Robinson put the car in drive and rolled it into the creek. Then they went down to the creek and put the bodies of Ms. Worley and Psoma in the water, leaving Alecia asleep in Ms. Worley's car. As the two men left to go home, they heard a child crying.

The State also produced evidence that defendant had been previously convicted of manslaughter. In that case, defendant's car was being chased by a car driven by Fred McNeil. After both cars crashed into a ditch, defendant emerged from his car and started shooting at McNeil. He shot McNeil, who fell and said, "Man, you got me." A witness to the incident testified that defendant then started shooting McNeil again, killing him. The State also presented evidence that defendant had two major infractions while incarcerated at Central Prison.

Defendant presented a number of experts who testified that he had a drug and alcohol problem, low intelligence, limited insight, and

poor judgment. Defendant also presented witnesses who testified as to his helpful and supportive nature, his honesty, and his job performance. Witnesses also testified about defendant's study of the Bible in prison. Defendant presented evidence that he was employed as a cook in the prison kitchen and had taken a cooking course sponsored by Wake Technical Community College. Finally, a fellow inmate testified that defendant had helped him adjust to prison life.

The jury found the existence of two aggravating circumstances and eight mitigating circumstances. As aggravating circumstances, the jury found that defendant had previously been convicted of a felony involving the use of violence to a person and that defendant committed the murder of James Worley for pecuniary gain. As a statutory mitigating circumstance, the jury found that defendant had aided in the apprehension of another capital felon. As nonstatutory mitigating circumstances, the jury found that (1) defendant had cooperated with law enforcement officers at an early stage of their investigation, (2) defendant was of good character and reputation in the community in which he lived and worked, (3) defendant had made substantial efforts to improve himself by participation in religious studies and voluntary training relative to his work in prison, (4) defendant had achieved a desirable position as a cook in prison, (5) defendant had made significant efforts to be of assistance to other inmates, (6) defendant had a desirable prison record of only two infractions, and (7) defendant consistently supported his child financially. The jury recommended a sentence of death, and the trial court sentenced defendant accordingly. Defendant appealed to this Court as a matter of right.

[1] Defendant first assigns as error the trial court's excusal of two prospective jurors. He contends that the trial court did not give him an adequate opportunity to rehabilitate them during the jury selection process. Prospective juror Otto Lovette stated that although he did not have any moral or religious objections to the death penalty, his religious views would make it hard for him to consider the issue of punishment in this case. Struggling to explain his religious "teachings," Lovette expressed doubt as to whether he could set aside his beliefs and follow the law. He indicated upon questioning by the prosecutor that his beliefs would interfere with his ability to decide whether defendant should live or die. During extensive questioning by defendant, Lovette reiterated his doubt as to his ability to surrender his "teachings."

Defendant argues that prospective juror Lovette's statements merely demonstrated his seriousness in approaching the issue of punishment in this case. Further, defendant contends the trial court prematurely excused Lovette for cause without allowing defendant an opportunity to rehabilitate. We disagree.

In *Wainwright v. Witt*, the Supreme Court held that a juror may properly be excused for his views on capital punishment if " 'those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 420, 83 L. Ed. 2d 841, 849 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). Problems frequently arise because jurors are not privy to the semantics and nuances of this test; therefore, they often fail to state clearly their ability or inability to set aside their beliefs which would prevent or substantially impair the performance of their duties. This Court has stated that "a prospective juror's bias may not always be 'provable with unmistakable clarity [and,] [i]n such cases, reviewing courts must defer to the trial court's judgment concerning whether the prospective juror would be able to follow the law impartially." *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 908 (1993) (quoting *State v. Davis*, 325 N.C. 607, 624, 386 S.E.2d 418, 426 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990)). The ruling of the trial court in such situations will not be disturbed absent an abuse of discretion. *Id.* (citing *State v. Wilson*, 313 N.C. 516, 526, 330 S.E.2d 450, 458 (1985)). Nothing in the transcript of the present case tends to indicate that further questioning would have shown that prospective juror Lovette could have set aside his strong religious beliefs in order to apply the law according to the trial court's instructions. Consequently, we must conclude that the trial court did not abuse its discretion in excusing prospective juror Lovette.

Defendant also asserts that the excusal of prospective juror Rebecca Dixon was error. Defendant argues that although Dixon initially indicated a general opposition to capital punishment, the trial court prematurely terminated defendant's attempt to rehabilitate her. He contends that this violated the rule established in *Brogden* that a trial court errs if it prohibits a defendant from any questioning intended to rehabilitate prospective jurors challenged for cause by the prosecution. We do not agree.

Here, prospective juror Dixon clearly and unequivocally stated that she could not temporarily set aside her religious beliefs against

the death penalty in deference to the rule of law. Moreover, defendant's attempts to rehabilitate her as a juror had already been fruitless and time-consuming.

In *Brogden*, we held that a trial court may not prohibit, in a blanket manner, all attempts at rehabilitation by defendant when a potential juror is challenged for cause. *Brogden*, 334 N.C. 39, 430 S.E.2d 905. However, it is within the discretion of the trial court to determine when such rehabilitation attempts have proven futile. *State v. Taylor*, 332 N.C. 372, 390, 420 S.E.2d 414, 425 (1992). In this case, defendant's additional questions did nothing to rehabilitate Dixon. Instead, she grew more steadfast in her view that she could not "go against [her] religious belief." Therefore, she was properly excused under *Witt*, and the trial court did not err in terminating defendant's questioning.

[2] In another assignment of error, defendant argues that the trial court erred by allowing the State to introduce evidence concerning the circumstances surrounding the murders of Shelia Denise Worley and the child, Psoma Baggett. Over objection, the trial court admitted this evidence as evidence tending to show the aggravating circumstance that the murder of James Worley was part of a course of conduct by defendant which included other crimes of violence against another person or persons. N.C.G.S. § 15A-2000(e)(11) (Supp. 1994). The jury rejected this aggravating circumstance.

In *State v. Cummings*, 332 N.C. 487, 422 S.E.2d 692 (1992), we held that a defendant's killing of two sisters, one of whom was his wife, over a period of twenty-six months was sufficiently linked to allow the trial court to submit evidence of those murders as tending to show a course of conduct by defendant. In order to submit the course of conduct aggravator, a trial court must consider the circumstances surrounding the acts of violence and discern evidence tending to show some connection, common scheme, or pattern that ties them together. *Id.* at 510, 422 S.E.2d at 705. In *Cummings*, we said, "It stands to reason that if multiple victims are from the same family, . . . it is much more likely that there exists some connection between their murders than if the victims were not so associated." *Id.* at 511, 422 S.E.2d at 705.

In the case *sub judice*, the facts surrounding the subsequent murders of James Worley's wife and her daughter were sufficiently connected to his murder to be submitted to the jury for their determination if they were, indeed, parts of the same course of conduct. Not only were the victims related, but Shelia Denise Worley solicited

defendant to commit the murder of James Worley. The contract murder of Mr. Worley, entered into by defendant and Ms. Worley, set into motion the chain of events that led to the murders of Ms. Worley and her daughter Psoma Baggett. Therefore, the evidence was sufficient to show that all of the murders were sufficiently connected to be parts of one course of conduct by defendant. The trial court did not err in admitting the evidence in question as evidence tending to establish the course of conduct aggravating circumstance, and the fact that the jury did not find this aggravating circumstance is irrelevant to the outcome of this issue.

[3] In another assignment of error, defendant argues that the trial court committed prejudicial error by allowing into evidence defendant's stipulation that he had been previously convicted of a felony involving the use of violence. On 12 June 1992, defendant filed a motion to limit testimony concerning his 1975 conviction for involuntary manslaughter. At the beginning of the new capital sentencing proceeding, defendant sought permission from the court to withdraw the 12 June 1992 motion and the stipulation contained therein. Without objection from the prosecution, the court allowed the withdrawal. However, during the sentencing hearing, the State sought to reintroduce the stipulation from the original trial. In defendant's original trial, defendant stipulated that he had been convicted of involuntary manslaughter, that the act involved the use of violence, and that he intentionally shot and killed the victim. Over objection by defendant, the trial court allowed the prosecutor to read the stipulation from the original trial into the record after the State had presented eyewitness testimony regarding the circumstances surrounding defendant's prior manslaughter conviction. The stipulation stated:

> The defendant hereby stipulates and agrees that on April 22, 1975, the defendant was convicted of involuntary manslaughter and that the act involved the use of violence in that Elton McLaughlin intentionally shot and killed Fred McNeil, Jr.

This evidence supported the State's submission of the aggravating circumstance that defendant had been previously convicted of a felony involving the use of violence to the person. N.C.G.S. § 15A-2000(e)(3).

Defendant argues that the prior stipulation from his original trial should not have been admitted into evidence. Defendant contends that parties cannot stipulate that various legal tests have been satisfied. *See State v. Fearing*, 315 N.C. 167, 337 S.E.2d 551 (1985) (stipulation concerning the competence of a witness); *State v. Prevette*, 39

**STATE v. McLAUGHLIN**

[341 N.C. 426 (1995)]

N.C. App. 470, 250 S.E.2d 682 (stipulation concerning a party's standing to challenge a search), *disc. rev. denied & appeal dismissed*, 297 N.C. 179, 254 S.E.2d 38 (1979). Generally, stipulations as to matters of law are not binding upon courts. *See Prevette*, 39 N.C. App. at 472, 250 S.E.2d at 683 (citing 73 Am. Jur. 2d *Stipulations* § 5 (1974)). However, we do not find this to be a stipulation as to a matter of law. Although the stipulation used the language "involved the use of violence," this language addressed the factual circumstances supporting the prior conviction rather than a legal standard. This assignment of error is without merit.

[4] In the next assignment, defendant argues that the trial court erred in not allowing him to present evidence to establish a nonstatutory mitigating circumstance that Robinson had received only life imprisonment for the murder of Mr. Worley. Defendant concedes that under prior ruling of this Court, "evidence of the plea bargain and sentencing agreement between the State and a codefendant was irrelevant and properly excluded from the jury's consideration." *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 447 (1981). "Such evidence has no bearing upon defendant's character, record or the nature of his participation in the offense." *Id.*; *see also State v. Williams*, 305 N.C. 656, 292 S.E.2d 243, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983). However, defendant contends that a recent United States Supreme Court case, *Parker v. Dugger*, 498 U.S. 308, 112 L. Ed. 2d 812, *reh'g denied*, 449 U.S. 932, 113 L. Ed. 2d 271 (1991), compels a different result.

In *Parker*, the Supreme Court considered whether a trial court improperly failed to consider relevant nonstatutory mitigating circumstances in the course of deciding to reject a jury recommendation of a sentence of life imprisonment. In reconstructing the weight the trial court gave to the nonstatutory mitigating circumstances, the Supreme Court considered all the evidence presented during the sentencing hearing, among which was evidence of sentences given to codefendants. Defendant in the present case argued at trial, as well as here, that *Parker* establishes that in a capital sentencing proceeding, a trial court must consider a codefendant's life sentence as relevant nonstatutory mitigating evidence. The trial court rejected defendant's attempt to extend the holding of *Parker* to this case, and we concur.

We do not accept the view that *Parker* creates a federal mandate for considering a codefendant's sentence as evidence supporting a nonstatutory mitigating circumstance. Instead, the Supreme Court

was simply reconstructing the weighing process conducted in the Florida trial court in absence of clear findings of fact by the trial court. When referencing the sentences of Parker's accomplices, the Court was simply considering whether the state court properly conducted the weighing of all the evidence that had been introduced. The issue of admissibility of a codefendant's sentence was not an issue in *Parker*. Consequently, the Supreme Court's decision there has no bearing on this case. We have consistently held that such evidence is inadmissible under North Carolina law. This assignment is without merit.

[5] In another assignment of error, defendant contends that the trial court committed prejudicial error by failing to intervene *ex mero motu* to preclude the prosecutor from making improper arguments. We have stated that "[t]rial counsel are allowed wide latitude in jury arguments. Counsel are permitted to argue the facts based on evidence which has been presented as well as reasonable inferences which can be drawn therefrom. Control of closing arguments is in the discretion of the trial court." *State v. Green*, 336 N.C. 142, 186, 443 S.E.2d 14, 39-40, *cert. denied*, —— U.S. ——, 130 L. Ed 2d 547 (1994). Moreover, "[b]ecause defendant did not object to the portions of the argument to which he now assigns error, 'review is limited to an examination of whether the argument was so grossly improper that the trial [court] abused [its] discretion in failing to intervene *ex mero motu*.' " *State v. McNeil*, 324 N.C. 33, 48, 375 S.E.2d 909, 918 (1989) (quoting *State v. Gladden*, 315 N.C. 398, 417, 340 S.E.2d 673, 685, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986)) (alternation in original), *sentence vacated*, 494 U.S. 1050, 108 L. Ed. 2d 756, *on remand*, 327 N.C. 388, 395 S.E.2d 106 (1990), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991). Regarding appellate review of prosecutorial comments, we have said:

"[P]rosecutorial statements are not placed in an isolated vacuum on appeal. Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred. Moreover, it must be remembered that the prosecutor of a capital case has a duty to pursue ardently the goal of persuading the jury that the facts in evidence warrant the imposition of the ultimate penalty."

*State v. Gibbs*, 335 N.C. 1, 64, 436 S.E.2d 321, 357-58, (quoting *State v. Pinch*, 306 N.C. 1, 24, 292 S.E.2d 203, 221-22, *cert. denied*, 459

U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied,* 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983)), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 321 (1993).

First, defendant argues that by emphasizing defendant's responsibility for his own predicament and minimizing the importance of the jury's role, the prosecutor's comments violated defendant's constitutional rights. During his closing argument, the prosecutor repeatedly emphasized that defendant started the chain of events that resulted in the jury being called to hear this case. Defendant contends that such an argument unconstitutionally diminished the jury's sense of responsibility for its sentencing decision.

We have previously held that such an argument does not violate defendant's constitutional rights. In *State v. Artis,* 325 N.C. 278, 384 S.E.2d 470 (1989), *sentence vacated,* 494 U.S. 1023, 108 L. Ed. 2d 604, *on remand,* 329 N.C. 679, 406 S.E.2d 827 (1991), we said:

> Viewed in context, it is plain these words were calculated not to relieve the jury of its responsibility, . . . but to indicate to the [jurors] the fact that it was defendant, not they, who chose to take the life of another, and that it was defendant, not they, who was master of his fate.

*Id.* at 328-29, 384 S.E.2d at 499 (citation omitted). Nothing in this case compels us to veer from this line of reasoning.

[6] Second, defendant argues that the trial court should have intervened *ex mero motu* because the prosecutor repeatedly misstated capital sentencing law. The prosecutor told the jurors that mitigating circumstances are "things which [defendant] says make his crime less deserving of the death penalty" and that "[y]ou don't have to find [a mitigating circumstance] if you don't want to." Defendant contends this statement implies that the jury can ignore credible mitigating evidence in violation of the state and federal Constitutions.

> A definition of mitigating circumstance approved by this court is a fact or group of facts which do not constitute any justification or excuse for killing or reduce to a lesser degree of the crime of first-degree murder, but which may be considered as extenuating, or reducing the moral culpability of the killing, or making it less deserving of the extreme punishment than other first-degree murders.

*State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 446-47. The prosecutor's definition did not deviate from that we set out in *Irwin*.

**[7]** Defendant also contends in support of this assignment that the prosecutor misstated the manner in which the jury should evaluate the mitigating and aggravating evidence. We disagree. The transcript shows that the prosecutor, while placing a negative interpretation upon defendant's evidence, was properly addressing the process of weighing aggravating and mitigating circumstances. The prosecutor accurately related the proper standard used in the weighing process. The prosecutor argued:

> Now, after you consider first the aggravating circumstances, whether they exist, whether any of you find the mitigating circumstance, you do a weighing process. Do you find that the— beyond a reasonable doubt that the mitigating circumstance or circumstances found is or are insufficient to outweigh the aggravating circumstance or circumstances?

This argument follows our death penalty statute, which states that the jury must consider whether "the mitigating circumstance or circumstances are insufficient to outweigh the aggravating circumstance or circumstances found." N.C.G.S. § 15A-2000(c)(3). We find no error in the prosecutor's comments.

**[8]** Defendant further argues in support of this assignment of error that the prosecutor improperly advanced numerous arguments which would support the death penalty in every case of first-degree murder. The prosecutor made comparisons between defendant's life and the life that his victims would never have. The prosecutor referred to defendant's ability to watch television, exercise in a gymnasium, and work in the kitchen. Then the prosecutor listed all the things the four-year-old victim would never be able to do, such as go to school, get in fights with her sister, and worry her mother. In addition, the prosecutor argued that because of defendant's conduct, Alecia never knew her sister or mother. At the very end of his argument, the prosecutor turned his attention to the murder of Mr. Worley:

> James Worley I'm sure had dreams. He had aspirations. And he had things he wanted to do in his life. Elton McLaughlin took that away from James Worley. He took that away from James Worley for three thousand dollars.

Although defendant concedes that the United States Supreme Court overruled *Booth v. Maryland*, 482 U.S. 496, 96 L. Ed. 2d 440 (holding

that use of a victim impact statement during sentencing violated the Eighth Amendment), *reh'g denied*, 483 U.S. 1056, 97 L. Ed. 2d 820 (1987), defendant argues that N.C.G.S. § 15A-2000 still renders victim impact considerations irrelevant in capital sentencing proceedings. We disagree. We find nothing in the prosecutor's argument that would compel a trial court to intercede *ex mero motu*.

**[9]** Defendant next argues in support of this assignment of error that the prosecutor made arguments without adequate evidentiary support, requiring the trial court to intervene. The prosecutor argued: "Some folks get hired for yard work. Some folks get hired to paint houses. Elton McLaughlin gets hired to kill people." Defendant contends that there is no evidence to support the argument that defendant was a contract killer. Furthermore, defendant objects to the prosecutor's references to the legal rights of defendant. The prosecutor argued:

> But Denise Worley isn't getting the benefits of Elton McLaughlin. She didn't get a trial. He sentenced her to death before coming to a jury. He sentenced her to death before he ever thought of having her come into a courtroom. He sentenced her to death because his life was more important.

The prosecutor also referred to defendant as a "mass murderer." According to defendant, such prosecutorial statements are grossly improper and required the trial court to intervene *ex mero motu*. We again disagree. We find nothing so "grossly improper" in this case as to require the trial court to intervene *ex mero motu*.

**[10]** In his next assignment of error, defendant maintains that the trial court committed prejudicial error by failing to submit the requested nonstatutory mitigating circumstances that defendant "was of low intelligence with poor judgment and limited insight," that defendant "was under a pattern of substance abuse at the time of the commission of the crime," and that defendant's "limited mental capacity at the time of the trial significantly reduced his culpability for the offense."

The trial court ruled that these proposed nonstatutory mitigating circumstances were subsumed in the mitigating circumstances set out in N.C.G.S. § 15A-2000(f)(2) and (f)(6). *See* N.C.G.S. § 15A-2000(f)(2) ("The capital felony was committed while defendant was under the influence of mental or emotional disturbance."); N.C.G.S. § 15A-2000(f)(6) ("The capacity of defendant to appreciate

the criminality of his conduct or to conform his conduct to the requirements of law was impaired.").

Defendant introduced substantial and uncontroverted evidence from numerous experts and lay witnesses to support his contention that he had these difficulties. According to defendant's expert witness, Dr. Patricio F. Lara, a psychiatrist at Dorothea Dix Hospital, defendant's "intellectual functions appeared to be at a borderline intellectual deficit range." Moreover, Dr. Lara testified that defendant suffered poor judgment and limited insight. In support of his finding, Dr. Lara presented the results of an IQ test that showed defendant's IQ to be 72. Dr. Lara also testified that defendant was "maladapted" and suffered from a personality disorder. Dr. John F. Warren, a psychologist practicing in Winston-Salem, tested defendant and found him to have a full-scale IQ of 76. Dr. Warren testified that people with borderline intellectual function are more prone to misinterpret things and do not function normally. In addition to the expert testimony, relatives of defendant testified that defendant had a drinking problem. Defendant's evidence also tended to show that he had abused drugs and alcohol.

This Court and the United States Supreme Court have held that evidence such as that introduced by defendant has potential mitigating value. *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256 (1989); *State v. Johnson*, 298 N.C. 47, 257 S.E.2d 597 (1979). However, the trial court refused to submit defendant's requested nonstatutory mitigating circumstances, finding that they were subsumed in the mitigating circumstances provided for by N.C.G.S. § 15A-2000(f)(2) and (f)(6). In explaining these two statutory mitigating circumstances, the judge instructed the jury:

First, consider whether this murder was committed while defendant was under the influence of mental or emotional disturbance. A defendant is under such influence if he is in any way affected or influenced by a mental or emotional disturbance at the time he kills.

. . . .

You would find this mitigating circumstance if you find that defendant suffered from a mixed personality disorder and that, as a result, defendant was under the influence of mental or emotional disturbance when he killed the victim. . . .

Second, consider whether the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

. . . .

You would find this mitigating circumstance if you find that defendant was impaired by borderline intellectual functioning with an I.Q. of 72 and a history of drug and alcohol abuse, and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

The trial court ruled that the two statutory mitigating circumstances coupled with these instructions properly subsumed defendant's three proposed nonstatutory mitigating circumstances. We conclude that the trial court was correct.

We have said that "where a defendant makes a timely written request for a listing in writing on the form of possible nonstatutory mitigating circumstances that are supported by the evidence and which the jury could reasonably deem to have mitigating value, the trial court must put such circumstances in writing on the form." *State v. Cummings*, 326 N.C. 298, 324, 389 S.E.2d 66, 80 (1990). In this case, defendant properly submitted his proposed nonstatutory mitigating circumstances, and those circumstances were supported by evidence. We have also held that it is not prejudicial error for the trial court to refuse to submit nonstatutory mitigating circumstances if it properly concludes that such nonstatutory mitigating circumstances are subsumed in the statutory mitigating circumstances given to the jury. *State v. Skipper*, 337 N.C. 1, 55, 446 S.E.2d 252, 282 (1994) (no error where trial court fails to submit a nonstatutory mitigating circumstance that was subsumed into a statutory mitigating circumstance), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995); *State v. Green*, 336 N.C. 142, 182-83, 443 S.E.2d 14, 37-38 (error to fail to submit a nonstatutory mitigating circumstance supported by evidence, but such error harmless beyond a reasonable doubt where that nonstatutory mitigating circumstance was subsumed into another nonstatutory mitigating circumstance); *State v. Benson*, 323 N.C. 318, 326-27, 372 S.E.2d 517, 522 (1988) (no error when trial court fails to submit a nonstatutory mitigating circumstance that was subsumed into another mitigating circumstance). However, the question presented by this assignment of error turns on whether the proposed nonstatutory mitigating circumstances were subsumed in the mitigating circumstances given. We conclude that defendant's proposed nonstatutory

mitigating circumstances were subsumed in the (f)(2) and (f)(6) statutory mitigating circumstances submitted to the jury by the trial court. Therefore, the trial court did not commit reversible error by failing to submit those nonstatutory mitigating circumstances for the jury's consideration.

Furthermore, the jury could have given this evidence mitigating value under the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9) ("Any other circumstance or circumstances arising from the evidence which one or more of you deems to have mitigating value."). This assignment of error is without merit.

[11] In another assignment of error, defendant argues that the trial court committed prejudicial error by failing to peremptorily instruct the jury with respect to certain nonstatutory mitigating circumstances concerning defendant's employment record and adjustment to incarceration. During the jury instruction conference, defendant argued that the jury should be given peremptory instructions as to the following nonstatutory mitigating circumstances that were submitted, *inter alia*, to the jury:

(4) That the Defendant cooperated with law enforcement officers at an early stage of their investigation in this case.

. . . .

(5) That the Defendant was regularly employed for over 12 years at Cape Craftsman and was a productive member of society.

. . . .

(7) That since the Defendant's incarceration he has made substantial efforts to improve himself by participation in both religious studies and voluntary training courses relative to his work in prison.

. . . .

(8) That since the Defendant's incarceration he has achieved a desirable and competitive position within the prison, working as a cook within the kitchen.

. . . .

(9) That since the Defendant's incarceration he has made significant efforts to be of assistance to other inmates in the prison to help them to adjust to prison life.

. . . .

(10) That since the Defendant's incarceration in 1984, he has achieved a desirable prison record of only Two (2) infractions and has had no infraction since August 31, 1987.

The State countered that peremptory instructions as to submitted nonstatutory mitigating circumstances numbers (7), (8), (9), and (10) would not be appropriate because it would imply to the jury that those proposed mitigating circumstances had mitigating value. However, the State conceded that the trial court should give the jury a peremptory instruction as to number (4)—defendant's assistance in the investigation.

We have held that a trial court should, if requested, give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted and manifestly credible evidence. *State v. Green*, 336 N.C. 142, 172-74, 443 S.E.2d 14, 32-33; *State v. Gay*, 334 N.C. 467, 493, 434 S.E.2d 840, 855 (1993). Thus, this issue turns on whether the evidence in support of the nonstatutory mitigating circumstances at issue was "uncontroverted." If the evidence is controverted or the evidence supporting the circumstance is not manifestly credible, the trial court should not give peremptory instructions. *Green*, 336 N.C. at 172-74, 443 S.E.2d at 32-33.

As to defendant's employment at Cape Craftsman and his productivity as a member of society, defendant presented a number of witnesses who testified to his good work ethic and his reputation for honesty. However, while the State concedes that it presented no contrary evidence as to his employment at Cape Craftsman, the State maintains that ample evidence contradicted defendant's contention that he was a "productive member of society." The State points to evidence tending to show that defendant was responsible for four deaths in the community and was a confessed drug and alcohol abuser. We agree with the State that defendant's status as a productive member of society was anything but uncontroverted. Therefore, a peremptory instruction as to that nonstatutory mitigating circumstance would not have been proper under *Green*. *Id.* (explaining, *inter alia*, the distinctions in peremptory instructions for statutory and nonstatutory mitigators).

[12] Defendant also contends that the jury should have been peremptorily instructed as to his self-improvement while incarcerated.

Several witnesses testified as to defendant's rehabilitation during his incarceration. Defendant's witnesses testified that he had taken Bible and culinary courses and had worked in the prison kitchen. However, the State produced evidence that defendant also had committed two major infractions while incarcerated. First, he was punished for concealing a weapon; second, he was punished for attempting to take flammable material from the kitchen for the purpose of causing other inmates bodily harm. In addition, he had been involved in a fistfight with another inmate. Therefore, the evidence as to this nonstatutory mitigating circumstance was controverted, and defendant was not entitled to a peremptory instruction.

Defendant also sought a peremptory instruction as to his "desirable prison record." The evidence as to this nonstatutory mitigating circumstance was again anything but uncontroverted. Possession of a weapon (a single-edged razor) and an attempt to remove a flammable material from the prison kitchen with intent to use it to cause bodily harm are not slight prison infractions. In addition, defendant had been involved in one fistfight with another inmate. For these offenses, he had served forty-five days in disciplinary segregation. Even though defendant has presented evidence as to his favorable prison job and interests in chess, biographies, and the Bible, evidence of his infractions made his evidence of having a "desirable prison record" controverted. Thus, the trial court did not err in failing to give a peremptory instruction on this nonstatutory mitigating circumstance.

[13] Defendant also sought a peremptory instruction as to the submitted nonstatutory mitigating circumstance that he had "made significant efforts to be of assistance to other inmates in the prison to help them to adjust to prison life." Defendant presented evidence tending to show that he had been of assistance to only one inmate. Although this evidence was not directly controverted by evidence produced by the State, it was not manifestly credible. Therefore, defendant was not entitled to a peremptory instruction on this nonstatutory mitigating circumstance.

[14] Finally, defendant contends that the trial court erred in failing to give a peremptory instruction to the jury with regard to the submitted mitigating circumstance that he had achieved a position as a cook in the prison kitchen. Evidence as to this mitigating circumstance was both uncontroverted and manifestly credible. Therefore, the trial

court erred in failing to give a peremptory instruction as to this non-statutory mitigating circumstance. *Id.*

For purposes of this opinion, we assume *arguendo* that the trial court's failure to give this peremptory instruction rose to the level of a federal constitutional violation. *Cf. State v. Benson,* 323 N.C. 318, 325-26, 372 S.E.2d 517, 521 (1988) (failure to *submit* nonstatutory mitigating circumstance "raises federal constitutional issues"). Therefore, we will deem this violation prejudicial unless we conclude it was harmless beyond a reasonable doubt. *Id.*

First, we note that the form returned by the jury clearly states that one or more members of the jury found this nonstatutory mitigating circumstance to exist and to have mitigating value. Nevertheless, we are unable to say that all jurors found this mitigator to exist and to have value or that more jurors would not have done so had a peremptory instruction been given. However, overwhelming evidence supported the jury's findings of the aggravating circumstances that defendant had been convicted of a prior violent felony and that the murder here was committed for pecuniary gain. When we consider the two aggravating circumstances found by the jury in light of the eight mitigating circumstances found by the jury, we are compelled to conclude that the trial court's failure to give a peremptory instruction, which may have caused one or more jurors to fail to find as a mitigating circumstance that defendant worked as a cook in the prison, was harmless error beyond a reasonable doubt. This assignment of error is without merit.

[15] Defendant contends in another assignment of error that the trial court committed plain error by failing to instruct the jury it could find the statutory mitigating circumstance set forth in N.C.G.S. § 15A-2000(f)(2) on the basis of evidence of defendant's poor judgment and limited insight. He also argues that the trial court erred by failing to instruct the jury it could find the statutory mitigating circumstance provided for in N.C.G.S. § 15A-2000(f)(6) on the basis of evidence of his poor judgment, limited insight, and consumption of intoxicating substances. Defendant contends that once the trial court undertook to instruct the jury about specific conditions that would permit a finding that the two statutory mitigating circumstances existed, it was required to state all possible conditions that tended to support a finding of either circumstance. Defendant argues that the trial court erred by failing to refer specifically to evidence of defendant's poor judgment, limited insight, and consumption of intoxicants

in connection with the two statutory mitigating circumstances. Defendant's counsel neither requested further instructions nor objected during trial. However, defendant now argues that the trial court's mistake amounted to plain error.

During the instructions to the jury, the trial court stated with regard to the N.C.G.S. § 15A-2000(f)(2) mitigator:

> You would find this mitigating circumstance if you find that defendant suffered from a mixed personality disorder and that, as a result, defendant was under the influence of a mental or emotional disturbance when he killed the victim.

Instructing the jury on the N.C.G.S. § 15A-2000(f)(6) mitigator, the trial court said:

> You would find this mitigating circumstance if you find that defendant was impaired by borderline intellectual functioning with an I.Q. of 72 and a history of drug and alcohol abuse, and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Defendant failed to make any objection to the instructions during trial. Our review is limited to plain error analysis. "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). In *Odom*, we also stated that plain error is " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *Id.* at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Although a trial court must adequately instruct the jury concerning the appropriate scope of the (f)(2) and (f)(6) statutory mitigating circumstances, we find nothing in the instructions given to warrant reversal based on plain error. Defendant was not prohibited from presenting evidence regarding his mental capacity. Given that the jury was presented with the evidence and defendant outlined all of the circumstances he contended supported finding these mitigating circumstances during his closing argument, we find no plain error.

[16] Defendant next assigns error to the trial court's definition of "mitigating circumstance" in response to a jury question. He contends

that the definition given unduly restricted the jury's consideration of relevant evidence.

After deliberating for a short period of time, the jury presented the following question to the trial court:

> There is a question of how mitigating circumstances are to be deemed of value. (By law)
>
> Do we just use common sense, or do you have specific instructions.
>
> Does the mitigating evidence (personal character (only) change since crime committed) have bearing on decision of life or death sentence?

The trial court conferred with counsel and decided to instruct the jury:

> A mitigating circumstance is a fact or a group of facts which do not constitute a justification or excuse for a killing, or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first degree murders.
>
> A juror may find that any mitigating circumstance exists by a preponderance of the evidence, whether or not that circumstance is found to exist by all of the jurors.
>
> And then finally, members of the jury, we are going to instruct you that you are to consider all aspects of the defendant's character as presented by the evidence, including the evidence relating to the defendant's character since the murder of the victim.

Defendant argues that the trial court erred by failing to reinstruct the jury to consider "any other circumstances arising from the evidence which you deem to have mitigating value." Defendant asserts that the trial court must use this language in its instructions as mandated under *Skipper v. South Carolina*, 476 U.S. 1, 4, 90 L. Ed. 2d 1, 6-7 (1986), which provides that any evidence may be mitigating so long as "the jury could have drawn . . . inferences favorable to defendant" regardless of the relation of that evidence "to [defendant's] culpability for the crime he committed."

It is important to point out that this assignment of error concerns a reinstruction of the jury. The jurors posed their question presum-

ably to clarify any confusion they had concerning the meaning of mitigating circumstances. The jury already had been instructed to consider any other evidence having mitigating value before the jury began its deliberations. Further, the written form given the jury directed it to consider and weigh "any other circumstance or circumstances arising from the evidence which . . . [has] mitigating value." When reviewed in their entirety, the original instructions and the additional instructions did not restrict the jury from considering all evidence which may have mitigating value. This assignment of error is without merit.

**[17]** In his next assignment of error, defendant argues that the trial court erred by denying defendant's request to question prospective jurors concerning their possible misconceptions regarding parole eligibility. Defendant also contends under this assignment that the trial court's ruling sustaining the State's objection to his attempt to introduce evidence regarding his parole eligibility was error.

During deliberations, the jury asked the trial court whether "three consecutive life terms means that defendant will never be eligible for parole." The trial court instructed the jury: "The question of eligibility for parole is not a proper matter for you to consider in recommending a punishment. . . . In considering whether to recommend death or life imprisonment, you should determine the question as though life imprisonment means exactly what the [s]tatute says, imprisonment for life in the State's prison."

Defendant argues that the instruction given was contrary to the opinion of the Supreme Court of the United States in *Simmons v. South Carolina*, 512 U.S. ——, 129 L. Ed. 2d 133 (1994). We have recently rejected this very argument. In *State v. Price*, 337 N.C. 756, 448 S.E.2d 827 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 224, *reh'g denied*, —— U.S. ——, 131 L. Ed. 2d 879 (1995), we stated that

the United States Supreme Court's decision in *Simmons* is limited to those situations where the alternative to a sentence of death is life imprisonment *without possibility of parole*. The language and rationale of the main opinion and the concurring opinions are expressly confined to situations in which a defendant sentenced to life imprisonment will not be eligible for parole.

*Id.* at 763, 448 S.E.2d at 831 (emphasis added). Here, the alternative to death was not life imprisonment without parole. Therefore, the

trial court properly excluded all references to parole eligibility during *voir dire*, the trial, and jury instructions. *Id.*

[18] As the eleventh issue in his brief, defendant states:

> The trial court committed prejudicial error by instructing the jury concerning their failure to agree upon an appropriate answer to the fourth issue in such a manner as to improperly coerce unanimity.

Defendant contends in his brief that, "[t]aken in context, the trial court's actual instructions strongly implied that the sentencing jury *must* reach a unanimous result and would be compelled to continue deliberating until they did so. As a result, the trial court's instructions concerning the effect of non-unanimity contravened G.S. [§] 15A-2000 and improperly coerced a verdict. . . ."

Although the defendant has made no argument specifically addressing the issue of whether the instruction requiring jury unanimity for any answer to Issue Four is an improper statement of the law, we will address that issue here. As noted in our case of *State v. McCarver*, 341 N.C. 364, 389-94, 462 S.E.2d 25, 39-42 (1995), a trial court correctly states the law when it instructs the jury that it must be unanimous in order to answer Issues One, Three and Four on the "Issues and Recommendation as to Punishment" form, either "yes" or "no." A jury must be unanimous in deciding any sentence determinative issue, and Issue Four is a sentence determinative issue. *Id.* "If the jury cannot, within a reasonable time, unanimously agree to its sentence recommendation, the judge shall impose a sentence of life imprisonment. . . ." N.C.G.S. § 15A-2000(b) (Supp. 1994). Therefore, the trial court in the present case properly instructed the jury that it must be unanimous before it could answer Issue Four "yes" or "no."

Given that the instruction requiring jury unanimity before giving either a "yes" or "no" answer to Issue Four was proper, we now turn to address the argument the defendant actually makes. In support of the eleventh issue set forth in his brief, defendant actually argues that the trial court committed prejudicial error by instructing the jury in a manner which improperly coerced unanimity by implying that they must render a decision on Issue Four and would be compelled to continue deliberating until they did so.

On two different occasions during the second day of jury deliberations, the trial court ascertained that the jury had not reached a recommendation as to sentence and instructed the jury to resume its

deliberations. The jury sent a note to the trial court indicating that it was divided eleven to one as to its recommendation. Thereafter, the trial court gave the following instructions:

As to Issue Number Four, I instruct you that your answer to Issue Number Four—that your answer to Issue Number Four, whether you answer "yes" or "no" must be unanimous.

Members of the jury, I am going to ask that you resume your deliberations in an attempt to return a recommendation. I have already instructed you that your recommendation must be unanimous. That is, each of you must agree on the recommendation. I shall give you these additional instructions.

First, it is your duty to consult with one another and deliberate with a view towards reaching a recommendation, if it can be done without violence to individual judgment.

And second, each of you must decide the case for yourself, and your recommendation for yourself, but only after an impartial consideration of the evidence with your fellow jurors.

Third, in the course of your deliberations you should not hesitate to reexamine your own views, and to change your opinion, if you become convinced it is erroneous. On the other hand, you should not hesitate to hold to your views and opinions if you remain convinced that they are correct.

Fourth, no juror should surrender his or her honest conviction as to the weight or the effect of the evidence solely because of the opinion of their fellow jurors, or for the mere purpose of reaching a recommendation.

Fifth, your inability to reach a unanimous recommendation as to punishment should not be your concern, but should simply be reported to the Court.

Please be mindful that I am in no way trying to coerce you to reach a recommendation. I recognize the fact that there are sometimes reasons why jurors cannot agree. Through these additional instructions I have just given you, I merely want to emphasize the fact that it is your duty to do whatever you can . . . to reason the matter together as reasonable people, to reconcile your differences, if you can without the surrender of honest convictions to reach a recommendation.

Although the trial court did instruct the jurors that their "inability to reach a unanimous recommendation as to punishment should not be [their] concern, but should simply be reported to the Court," defendant argues that this instruction was coupled with language which is objectionable under *State v. Smith*, 320 N.C. 404, 422, 358 S.E.2d 329, 339 (1987). Defendant contends that taken in the context, the trial court's actual instructions strongly imply that the sentencing jurors must reach a unanimous result and would be compelled to continue deliberating until they did so. We disagree.

In determining whether an instruction coerced the jury to render a judgment, "an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury." *State v. Alston*, 294 N.C. 577, 593, 243 S.E.2d 354, 364-65 (1978). In considering the instruction at issue here, we conclude that the trial court properly instructed the jury. First, the jurors merely stated that they were not unanimous; they did not specifically inquire as to the consequence of inability to reach unanimity as in *Smith*. Second, the trial court explicitly instructed the jurors that their "inability to reach a unanimous recommendation as to punishment should not be [their] concern, but should simply be reported to the Court." This language fully complies with our holding in *Smith*. "The lesson in *Smith* is that, in telling a jury that its recommendation as to punishment must be unanimous, the trial court must be vigilant to inform the jurors that whatever recommendation they *do* make must be unanimous and not to imply that a recommendation *must* be reached." *State v. Price*, 326 N.C. 56, 92, 388 S.E.2d 84, 105 (1990). That is exactly what the trial court did in this situation. Third, we find nothing coercive in the instructions when they are reviewed in context and in their entirety. Therefore, we find no error, and this assignment of error is without merit.

[19] On 11 October 1994, this Court allowed defendant to bring forth an additional issue[1] concerning a codefendant's assertion of his Fifth Amendment privilege and the resulting admission of his prior testimony. Defendant argues that the trial court committed prejudicial error by allowing the admission of a transcript of a codefendant's testimony from defendant's first trial into evidence after finding that the codefendant was "unavailable" on grounds of privilege. Specifically,

---

1. In his motion to amend his brief, defendant also asserted five additional preservation issues. We have grouped these additional preservation issues with the ones asserted in the original brief. The preservation issues are discussed below.

defendant contends that the trial court did not adequately determine that the codefendant was, in fact, entitled to assert the privilege against self-incrimination in this proceeding.

During the new capital sentencing proceeding, the State called codefendant Robinson to testify. After stating his name, Robinson, through his attorney, asserted his privilege against self-incrimination. Over defendant's objection, the trial court ruled that Robinson was "unavailable" as that term is defined in N.C.G.S. § 8C-1, Rule 804(b)(1) and allowed Robinson's recorded testimony from defendant's prior trial to be read into evidence. Defendant contends that the admission of this recorded prior testimony was improperly admitted and so unfairly prejudiced him as to require a new capital sentencing proceeding. We do not agree.

Our capital sentencing laws provide:

In the [capital sentencing] proceeding there shall not be any requirement to resubmit evidence presented during the guilt determination phase of the case, unless a new jury is impanelled, but *all such evidence is competent for the jury's consideration in passing on punishment.*

N.C.G.S. § 15A-2000(a)(3) (emphasis added). Defendant in this case was not awarded a new trial but was awarded a new capital sentencing proceeding based on *McKoy* error; therefore, a new jury was impanelled solely to recommend punishment. Under N.C.G.S. § 15A-2000(a)(3), the State was required to resubmit the evidence presented in the original trial in order to have it considered, but such evidence was competent as a matter of law. Whether the evidence at issue here was admissible under N.C.G.S. § 8C-1, Rule 804 is not controlling in the case at hand. Instead, N.C.G.S. § 15A-2000(a)(3) expressly provides that evidence presented during the guilt determination phase of a capital case is competent and admissible as a matter of law during a capital sentencing proceeding in the same case. Therefore, the evidence was properly admitted.

[20] Although the evidence at issue here was admissible as a matter of law under the statute, we must also address whether the admission of that recorded prior testimony violated defendant's confrontation rights under the federal and state constitutions. The Supreme Court of the United States has held that the Confrontation Clause is not violated by the admission of a witness' recorded prior testimony where the witness

was under oath[;] [defendant] was represented by counsel—the same counsel in fact who later represented him at trial[;] [defendant] had every opportunity to cross-examine [the witness] as to his statement[;] and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings.

*California v. Green*, 399 U.S. 149, 165, 26 L. Ed. 2d 489, 501 (1970); *see also State v. Prince*, 270 N.C. 769, 154 S.E.2d 897 (1967) (constitutional right of confrontation not denied by introduction of prior testimony where witness has since died, become insane, left the state, become incapacitated, or absented himself by procurement of or connivance with the accused). In *Green*, the Supreme Court went on to say that even when the witness whose prior testimony had been recorded took the stand and testified, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, *or simply refused to answer*, nothing in the Confrontation Clause prohibited the State from relying on his recorded prior testimony to prove its case. *Green*, 399 U.S. at 167-68, 26 L. Ed. 2d at 502.

In the case at hand, defendant was represented by counsel at his original trial and had ample opportunity to cross-examine Robinson on the stand at that time. Defendant did in fact extensively cross-examine Robinson during the original trial. His motivation to cross-examine Robinson then was the same as his motivation at the new capital sentencing proceeding leading to this appeal. Furthermore, without addressing the propriety or impropriety of Robinson's claim of privilege against self-incrimination, as in *Green*, Robinson simply refused to answer any questions. In light of the holding of *Green* and our holding in *Prince*, we conclude that defendant's confrontation rights were not violated under either the state or federal constitutions. This assignment of error is overruled.

Defendant has also brought forward numerous assignments of error presenting "preservation issues." As to each of these issues, defendant acknowledges with commendable candor that prior decisions of this Court require a ruling contrary to his contentions. He raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also "for the purpose of preserving these issues for any necessary federal habeas corpus review." Having carefully examined each of those assignments of error, we conclude that they are without merit.

[21] Having concluded that defendant's capital sentencing proceeding was free from prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. We have thoroughly examined the record, transcripts, and briefs in the present case and concluded that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In conducting proportionality review, we must determine "whether the sentence of death in the present case is excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant." *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 354, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983).

> In essence, our task on proportionality review is to compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and defendant's character, background, and physical and mental condition.

*State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). The pool of available cases from which those roughly similar with regard to the crime and defendant may be drawn for comparison purposes has been defined as

> *all cases* since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*Williams*, 308 N.C. at 79, 301 S.E.2d at 355. "The pool, however, includes only those cases which this Court has found to be free of error in both phases of the trial." *State v. Stokes*, 319 N.C. 1, 19-20, 352 S.E.2d 653, 663 (1987). We have recently clarified the composition of the proportionality pool, noting:

Because the "proportionality pool" is limited to cases involving first-degree murder convictions, a post-conviction proceeding which holds that the State may not prosecute the defendant for first-degree murder or results in a retrial at which the defendant is acquitted or found guilty of a lesser included offense results in the removal of that case from the "pool." When a post-conviction proceeding results in a new capital trial or sentencing proceeding, which, in turn, results in a life sentence for a "death-eligible" defendant, the case is treated as a "life" case for purposes of proportionality review. The case of a defendant sentenced to life imprisonment at a resentencing proceeding ordered in a post-conviction proceeding is similarly treated. Finally, the case of a defendant who is either convicted of first-degree murder and sentenced to death at a new trial or sentenced to death in a resentencing proceeding ordered in a post-conviction proceeding, which sentence is subsequently affirmed by this Court, is treated as a "death-affirmed" case.

*State v. Bacon*, 337 N.C. 66, 107, 446 S.E.2d at 542, 564 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995). Simply, the pool includes only cases found to be free of error in both the guilt-innocence and penalty phases.

In the present case, defendant had previously been convicted of three counts of first-degree murder for which he received one death sentence for the murder of James Worley and two life sentences for the murders of Shelia Denise Worley and Psoma Wine Baggett. During the new capital sentencing proceeding, which is the subject of this appeal, the jury considered the sentencing of defendant solely for the murder of James Worley. As to this murder, the jury found: (1) that defendant had been previously convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3); and (2) that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). The jury also found as mitigating circumstances that: (1) defendant aided in the apprehension of another capital felon; (2) defendant cooperated with law enforcement officers at an early stage of their investigation in this case; (3) defendant was of good character and reputation in the community in which he lived and worked; (4) since defendant's incarceration, he has made substantial efforts to improve himself by participation in both religious studies and voluntary training courses relative to his work within the prison; (5) since defendant's incarceration, he has achieved a desirable and competitive position within the prison, working as a cook within the kitchen; (6) since

defendant's incarceration, he has made significant efforts to be of assistance to other inmates in the prison to help them to adjust to prison life; (7) since defendant's incarceration in 1984, he has achieved a desirable prison record of only two infractions and has had no infraction since 31 August 1987; and (8) defendant has consistently supported his child financially.

In our proportionality review, we must compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162, (1993). We find this case is not substantially similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases is distinguishable from the present case.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517, the evidence tended to show that defendant hid in the bushes at a bank and waited for the victim to make a night deposit. When the victim arrived, defendant demanded the money bag. When the victim hesitated, defendant fired a shotgun, striking the victim in both legs. The victim later died of cardiac arrest caused by the loss of blood from the shotgun wounds. The jury found only the aggravating circumstance of murder for pecuniary gain. *Benson* is easily distinguishable from the present case. Here, in addition to the pecuniary gain aggravating circumstance, the jury also found the aggravating circumstance that defendant had previously been convicted of a felony involving the use or threatened use of violence to the person. Further, defendant in the present case committed three murders rather than a single murder such as that committed by defendant in *Benson*.

In *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653, defendant and several others planned to rob the victim's place of business. During the robbery, one of the assailants beat the victim, killing him. *Stokes* is also easily distinguishable from the present case because the jury in *Stokes* found only one aggravating circumstance, that the murder was especially heinous, atrocious, or cruel. In the present case, the jury found two aggravating circumstances. More importantly, defendant in the present case, unlike the defendant in *Stokes*, killed three victims rather than one.

In *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), the only aggravating circumstance found by the jury was that

the murder for which defendant was convicted was part of a course of conduct which included the commission of other crimes of violence against another person or persons. In the present case, the jury found two aggravating circumstances. Also, defendant in the present case murdered three victims, while defendant in *Rogers* killed only one.

In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), defendant and two companions went to the victim's home intending to rob and murder him. After gaining entry into the victim's home, the men killed him and stole his money. The jury found as aggravating circumstances that the murder was committed during the commission of a robbery or burglary and that it was committed for pecuniary gain. In concluding that the death penalty was disproportionate in *Young*, this Court focused on the failure of the jury in *Young* to find either the aggravating circumstance that the murder was especially heinous, atrocious, or cruel or the aggravating circumstance that the murder was committed as part of a course of conduct which included the commission of violence against another person or persons. The present case is easily distinguishable from *Young* because, among other things, the jury found as an aggravating circumstance that defendant had previously been convicted of a felony involving the use or threatened use of violence to the person. Additionally, it bears repeating that defendant in this case murdered three victims, unlike defendant in *Young*.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the single aggravating circumstance found by the jury was that the murder was committed against a law enforcement officer engaged in the performance of his official duties. In the present case, the jury found two entirely different aggravating circumstances. *Hill* is easily distinguishable from this case in which defendant contracted to kill Mr. Worley for money and later killed Ms. Worley and her young child when Ms. Worley failed to pay him.

In *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), defendant was on foot and waved down the victim as the victim passed in his truck. Shortly thereafter, the victim's body was discovered in the truck. He had been shot twice in the head, and his wallet was gone. The single aggravating circumstance found was that the murder was committed for pecuniary gain. *Jackson* is easily distinguishable from the present case in which the jury found the additional aggravating circumstance that defendant had previously been convicted of a

felony involving the use or threatened use of violence to the person. Moreover, defendant here murdered three victims, rather than one.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the evidence tended to show that defendant and a group of friends were riding in a car when defendant taunted the victim by telling him that he would shoot him and by questioning whether the victim believed that defendant would shoot him. Defendant shot the victim but then immediately directed the driver to proceed to the emergency room of the local hospital. In concluding that the death penalty was disproportionate there, we focused on defendant's immediate attempt to obtain medical assistance for the victim and the lack of any apparent motive for the killing. In contrast, the evidence in the present case tended to show that defendant made no efforts to assist any of his victims. To the contrary, he placed the body of Mr. Worley in a car and set it afire. The bodies of Ms. Worley and her child were left floating in a creek, either dead or dying.

In sum, we have never found that the death penalty is disproportionate for a convicted murderer of multiple victims. We have said that "[a] heavy factor . . . is that he is a multiple killer." *State v. Robbins*, 319 N.C. 465, 529, 356 S.E.2d 279, 316, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Moreover, none of the above-cited cases involved a contract killing. For the foregoing reasons, we conclude that each of the cases in which we have found the death penalty to be disproportionate is distinguishable from the present case. In fact, the present case bears little or no similarity to any of those cases.

In performing our statutory duty of proportionality review, it is also appropriate for us to compare the case before us to other cases in the pool used for proportionality review. *Lawson*, 310 N.C. at 648, 314 S.E.2d at 503.

> If, after making such comparison, we find that juries have consistently returned death sentences in factually similar cases, we will have a strong basis for concluding that the death sentence under review is not excessive or disproportionate. If juries have consistently returned life sentences in factually similar cases, however, we will have a strong basis for concluding that the death sentence in the case under review is disproportionate.

*McCollum*, 334 N.C. at 242, 433 S.E.2d at 163. However, the factors to be considered and their relevance during proportionality review in a given capital case "will be as numerous and as varied as the cases

coming before us on appeal." *Williams*, 308 N.C. at 80, 301 S.E.2d at 355. Therefore, the fact that in one or more cases factually similar to this case, a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review. Early in the process of developing our methods for proportionality review, we indicated that similarity of cases, no matter how many factors are compared, will not be allowed to "become the last word on the subject of proportionality rather than serving as an initial point of inquiry." *Id.* at 80-81, 301 S.E.2d at 356. Instead, we stated plainly that the constitutional requirement of "individualized consideration" as to proportionality could only be served if the issue of whether the death penalty was disproportionate in a particular case ultimately rested upon the "experienced judgments" of the members of this Court, rather than upon mere numerical comparisons of aggravators, mitigators, and other circumstances. Further, the fact that one, two, or several juries have returned recommendations of life imprisonment in cases similar to the one under review does not automatically establish that juries have "consistently" returned life sentences in factually similar cases.

Defendant here has cited a number of cases involving multiple killings where defendant or defendants received life sentences. None of these cases involved a defendant who committed a "contract killing." It suffices to say that we have examined all of the numerous cases cited by defendant and conclude that each of them is distinguishable from the present case.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we review all of the cases in the pool when engaging in our statutorily mandated duty of proportionality review, we reemphasize here "that we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* "The Bar may safely assume that we are aware of our own opinions filed in capital cases arising since the effective date of our capital punishment statute, 1 June 1977." *Williams*, 308 N.C. at 81-82, 301 S.E.2d at 356. Here, it suffices to say that we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or those in which juries have consistently returned recommendations of life imprisonment.

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

We have consistently stated that "this Court has never found disproportionality in a case in which defendant was found guilty for the death of more than one victim." *State v. Price*, 326 N.C. 56, 388 S.E.2d 84, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990), *on remand*, 331 N.C. 620, 418 S.E.2d 169 (1992), *sentence vacated on other grounds*, —— U.S. ——, 122 L. Ed. 2d 113, *on remand*, 334 N.C. 615, 433 S.E.2d 746 (1993), *sentence vacated on other grounds*, —— U.S. ——, 129 L. Ed. 2d 888, *on remand*, 337 N.C. 756, 448 S.E.2d 827 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 224 (1995), *reh'g denied*, —— U.S. ——, 131 L. Ed. 2d 879 (1995).

After comparing this case carefully with all others in the pool used for proportionality review, we conclude that it falls within the class of first-degree murders in which we have previously upheld the death penalty. For the foregoing reasons, we conclude that the sentence of death entered in the present case is not disproportionate.

Having considered and rejected all of defendant's assignments of errors, we hold that defendant's capital sentencing proceeding was free of prejudicial error and that the resulting sentence of death was not disproportionate. Therefore, the sentence of death entered against defendant must be and is left undisturbed.

NO ERROR.

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Justice FRYE dissenting.

I disagree with the majority's holding in this case and in *State v. McCarver*, 341 N.C. 364, 396, 462 S.E.2d 25, 43 (1995), that a trial court correctly states the law in a capital sentencing proceeding when it instructs the jury that it must be unanimous in order to answer "no" to Issues One, Three and Four on the "Issues and Recommendation as to Punishment" form. I especially disagree with the majority's apparent holding that the instruction is somehow mandated by the North Carolina Constitution. Accordingly, for the reasons stated in my dissent in *McCarver*, and for the additional reasons stated here, I dissent.

Defendant's eleventh assignment of error in this capital sentencing case is as follows:

STATE v. McLAUGHLIN

[341 N.C. 426 (1995)]

DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR BY INSTRUCTING THE JURY CONCERNING THEIR FAILURE TO AGREE UPON AN APPROPRIATE ANSWER TO THE FOURTH ISSUE IN SUCH A MANNER AS TO IMPROPERLY COERCE UNANIMITY?

The trial court instructed the jury immediately after the lunch recess on 16 March 1993 as follows:

> [I]t is not enough for the State to prove from the evidence beyond a reasonable doubt the existence of one or more aggravating circumstances. It must also prove beyond a reasonable doubt that such aggravating circumstances are sufficiently substantial to call for the death penalty, and before you may answer Issue Number Four, "Yes," you must agree unanimously that they are.
>
> If you answer Issue Number Four, "No," you must recommend that the defendant be sentenced to life imprisonment. If you answer Issue Number Four, "Yes," it would be your duty to recommend that the defendant be sentenced to death.

The jury deliberated concerning defendant's sentence until 4:55 p.m. on the afternoon of 16 March 1993. The jury then recessed until the next day.

On two different occasions during the morning of 17 March 1993, the trial court ascertained that the jury had not reached a unanimous verdict and requested that the jury resume its deliberations. After many hours of deliberation, the jurors were obviously confused as to what they should do. Shortly before noon, they indicated in written communication to the court that their vote was eleven to one and that their answer to Issue Four was "No." More specifically, the note stated, in pertinent part: "Issue 4 contradicts recommendation as to punishment (eg.) Issue 4 is <u>No</u> yet Recommendation states we the jury '<u>unanimously</u>' Recommend [—] we are not unanimous (11 to 1)."

The trial court and defendant's counsel engaged in a lengthy discussion concerning the appropriate response to the jury's statement. At the suggestion of the State, the trial court gave the jury a supplemental instruction as follows:

> First question is, "Issue Number Four contradicts recommendation as to punishment. Example: Issue Number Four is no, and recommendation states, we, the jury, unanimously recommend." And you go on to say, "We, are not unanimous," and that "We are eleven to one."

. . . .

And, members of the jury, I'm going to give you these additional instructions, and will ask you to pay careful attention.

As to Issue Number Four, I instruct you that your answer to Issue Number Four—that your answer to Issue Number Four, whether you answer "yes" or "no" must be unanimous.

. . . .

And, members of the jury, I want to make it clear that as you answer Issue Number Four "yes" or "no" unanimously, then that will of consequence determine your answer to the recommendation. So please understand if you answer Issue Number Four "yes," your recommendation will be the death penalty. And if you answer Issue Number Four "no," your recommendation will be life imprisonment.

I conclude that the trial court committed reversible error in responding to the question from the sentencing jury, because the court's supplemental instruction incorrectly informed the jury that it could not answer "no" to Issue Four on the written Issues and Recommendation As To Punishment form unless all twelve jurors concurred in the negative answer. I further conclude that this error entitles defendant to a new sentencing proceeding.

In this case, the jury was given a form entitled: Issues and Recommendation as to Punishment. The first part of the form is labeled: Issues. There are four issues on the form. Issue Two relates to the finding of mitigating circumstances, and contains no reference to unanimity. Issues One, Three and Four, on the other hand, begin as follows: "Do you unanimously find." It seems clear to me that if the jurors vote eleven to one on issue One, Three or Four, their answer to that issue has to be "no." The second part of the form is labeled: Recommendation As To Punishment. There is one recommendation on the form. It is: "We, the jury unanimously recommend that the Defendant ELTON OZELL McLAUGHLIN, be sentenced to _____."

In the instant case, the jury's note indicated that it had answered issue Four "no" because its vote was eleven to one. Issue Four on the Issues and Recommendation form read as follows:

Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are,

**STATE v. McLAUGHLIN**

[341 N.C. 426 (1995)]

sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

ANSWER: _____

The judge should have instructed the jurors that they should continue to try to reach unanimity as to Issue Four, but if they could not unanimously answer "yes" to Issue Four, the foreman should write "no" in the space provided for the answer to that issue. Instead, the trial judge, as the majority does here, failed to distinguish between the *issues* the jury must answer in reaching a recommendation as to life or death and the *recommendation* itself. The jury can recommend death *only if it unanimously* answers *yes to Issues One, Three and Four*. If the jury does not *unanimously* answer yes to Issues One, Three and Four, it cannot recommend death as punishment for defendant's crime. See N.C.G.S. § 15A-2000(b), (c) (Supp. 1994). If the jury cannot unanimously agree to its sentencing recommendation, the judge will impose a sentence of life imprisonment. N.C.G.S. § 15A-2000(b) (Supp. 1994).

In this case, the jury was given two alternative instructions upon which to determine its sentencing recommendations: (1) the law as stated in the court's initial instructions and on the Issues and Recommendation As To Punishment form, and (2) the law as stated in the supplemental instruction. Where a jury is given two alternate theories upon which to base its decision, one of which is improper, the matter must be remanded for a new proceeding. *State v. Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987). This result is required because the appellate court is unable to determine upon which instructions the jury relied in reaching its decision and, therefore, must assume that the jury relied on the erroneous, improper instructions. *Id.* This Court is "not at liberty" to assume upon which instructions defendant's sentencing jury relied. *State v. Belton*, 318 N.C. 141, 162, 347 S.E.2d 755, 768 (1986). We "cannot assume the jury adopted a theory favorable to the state; instead, [we must] construe[] the ambiguity in favor of defendant." *Id.*

Furthermore, I conclude that the supplementary instruction had a probable impact on the jury's recommendation of defendant's death sentence. As noted earlier, the jury informed the judge that its vote at the time on Issue Four was eleven to one. Had the jury been properly instructed, it may have answered "no" to Issue Four, thus resulting in a sentence of life imprisonment. Accordingly, defendant's death sen-

tence should be vacated and the case remanded for a new capital sentencing proceeding in accord with N.C.G.S. § 15A-2000.

Justice WHICHARD joins in this dissenting opinion.